[S. F. No. 571.  In Bank.—September 15, 1899.]

In the Matter of the Estate of LELAND STANFORD, Deceased. HERBERT C. NASH et al., Appellants, v. A. C. WIDBER, County Treasurer, Respondent.

Tax upon Collateral Inheritances, Bequests and Devises— Constitutional Law.—The act of 1893 to establish a tax on collateral inheritances, bequests, and devises is constitutional and valid.

Id.—Vested Right of State—Amendment of 1897 not Retroactive.—By the operation of the act of 1893 the tax on collateral inheritances, devises, and bequests accruing thereunder became immediately payable at the death of the decedent, and the right of the state thereto was vested upon such death, and could not be divested retroactively by the subsequent amendment and alteration of the statute made in 1897.

Id.—Ownership of Tax—Possession.—The state's ownership of such tax does not depend upon its payment, or possession thereof by the state, but only upon its right of possession, which accrued at the death of the decedent.

Id.—Exemption of Unpaid Taxes before Accrued—Special Legislation—Donation from State.—The second section of the act of 1897, which purports retroactively to exempt resident nephews and nieces, and educational and other benevolent corporations

from the payment of unpaid taxes upon collateral inheritances, bequests and devises, violates subdivision 17 of section 25 of article IV of the constitution forbidding special legislation releasing any existing obligation to the state, which cannot be done under the guise of a general law; and violates sections 22 and 31 of the same article, prohibiting donations or gifts from the state of any property to any institution not under the exclusive management or control of the state, and of any thing of value to any individual or corporation.

APPEAL from an order of the Superior Court of the City and County of San Francisco for the payment of a tax upon collateral bequests. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Wilson & Wilson, for Jane L. Stanford, Executrix of Will of Leland Stanford, Deceased, Appellant.

Edward R. Taylor, for Agnes Stanford Taylor, and Interested Unrepresented Parties, Appellants.

A. N. Drown, for Josia W. Stanford, Jr., Appellant.

Gordon & Young, for Jerome B. Stanford, and Philip W. Stanford, Appellants.

Francis E. Spencer, and S. F. Leib, for Trustees of Leland Stanford Junior University, Appellants.

Cotton & Cotton, for Nonresident Nephews and Nieces of Decedent, Appellants.

Tirey L. Ford, Attorney General, George A. Sturtevant, Deputy Attorney General, I. J. Truman, Jr., W. S. Barnes, and Elliot McAllister, for Respondent.

VAN DYKE, J.—Leland Stanford died June 21, 1893, leaving a last will and testament by which he gave the sum of two million five hundred thousand dollars to certain trustees for the benefit of Leland Stanford Junior University, and also legacies amounting to two million two hundred thousand dollars to certain of his nephews and nieces. April 14, 1896, the superior court of San Francisco, in which the settlement of said estate was pending, on application of the treasurer of the

city and county of San Francisco, made an order requiring
Jane L. Stanford, as executrix of the last will and testament
of said Leland Stanford, deceased, to pay into the treasury of
the said city and county two hundred and thirty-five thousand
seven hundred and fifty dollars, as and for a tax on collateral
inheritances.    From this order an appeal was taken May 18,
1896.    The act under which the order was made directing the
inheritance tax to be paid over was approved March 23, 1893,
and took effect sixty days thereafter.    (Stats. 1893, p. 193.)    It
is entitled, "An act to establish a tax on collateral inheritances,
bequests, and devises, to provide for its collection, and to di-
rect the disposition of the proceeds."    The first section reads
as follows:

"Section 1.    After the passage of this act, all property which
shall pass, by will or by the intestate laws of this state, from
any person who may die seised or possessed of the same while
a resident of this state, or if such decedent was not a resident
of this state, at the time of death, which property, or any part
thereof, shall be within this state, or any interest therein or
income therefrom which shall be transferred by deed, grant,
sale, or gift, made in contemplation of the death of the grantor
or bargainor, or intended to take effect in possession or en-
joyment after such death, to any person or persons, or to any
body politic or corporate, in trust or otherwise, or by reason
whereof any person or body, politic or corporate, shall become
beneficially entitled, in possession or expectancy, to any prop-
erty, or to the income thereof, other than to or for the use of
his or her father, mother, husband, wife, lawful issue, brother,
sister, the wife or widow of a son, or the husband of a daugh-
ter, or any child or children adopted as such in conformity
with the laws of the state of California, and any lineal de-
scendant of such decedent, born in lawful wedlock, or the so-
cieties, corporations, and institutions now exempted by law
from taxation, by reason whereof any such person or corpora-
tion shall become beneficially entitled, in possession or expect-
ancy, to any such property, or to the income thereof, shall be and
is subject to a tax of five dollars on every hundred dollars of
the market value of such property, and at a proportionate rate
for any less amount, to be paid to the treasurer of the proper

county, as hereinafter defined, for the use of the state; and all administrators, executors, and trustees shall be liable for any and all such taxes until the same shall have been paid, as hereinafter directed; provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to such duty or tax."

Section 4 reads: "All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and if the same are paid within eighteen months, no interest shall be charged and collected thereon, but, if not so paid, interest at the rate of ten per centum per annum shall be charged and collected from the time said tax accrued; provided, that if said tax is paid within six months after the accruing thereof a discount of five per centum shall be allowed and deducted from said tax. And in all cases where the executors, administrators, or trustees do not pay such tax within eighteen months from the death of the decedent, they shall be required to give a bond, in the form and to the effect prescribed in section 2 of this act, for the payment of said tax, together with interest." In another section it is provided that if litigation becomes necessary, or other unavoidable cause for delay, the estate cannot be settled at the end of eighteen months, then only seven per cent should be charged. The tax paid over to or collected by the county treasurer is by him required to be paid into the treasury of the state for the use of the state school fund.

After the appeal herein was perfected, this court, *In re Wilmerding*, 117 Cal. 281, had occasion to consider the nature and character of this collateral inheritance tax, and therein, also, held the act in question to be constitutional. In the opinion in that case it is said: "Similar statutes have been enacted in other states, and, with the exception of New Hampshire, have been sustained by the courts in those states, upon the ground that the charge thus imposed is in the nature of an excise tax, or a tax upon the right of succession, and is within the constitutional power of the legislature." (Citing a number of cases of the various states.) "The principles upon which the tax is upheld have been so fully and clearly elaborated in the above cases that it is necessary to do no more than to refer to

the cases. The right of inheritance, including the designation of heirs and the proportions which the several heirs shall receive, as well as the right of testamentary disposition, are entirely matters of statutory enactment and within the control of the legislature. As it is only by virtue of the statute that the heir is entitled to receive any of his ancestor's estate, or that the ancestor can divert his estate from the heir, the same authority which confers this privilege may attach to it the condition that a portion of the estate so received shall be contributed to the state, and the portion thus to be contributed is peculiarly within the legislative discretion." And again: "As this tax is not upon property, but upon the right of succession, the constitutional provision that all property shall be taxed according to its value is inapplicable. The right of the legislature to impose an excise tax includes the right to select the subjects upon which it shall be imposed." In *Estate of Swift*, 137 N. Y. 83, cited by appellants, that court, in speaking of this question, says: "The precise definition of the nature of this tax is not essential, if it is susceptible of exact definition. Thus far in this court we have not thought it necessary in the cases coming before us to determine whether the object of taxation is the property which passes or not; though in some, expressions may be found which seem to regard the tax in that light." (Referring to a number of cases in that state.) "The idea of this succession tax, as we may conveniently term it, is more or less compound; the principal idea being the subjection of property, ownership of which has ceased by reason of the death of the owner, to a diminution, by the state reserving to itself a portion of its amount, if in money, or of its appraised value, if in other forms of property."

The decision in the Wilmerding case would have disposed of this appeal were it not that the act in question was amended by the legislature of 1897. The act of 1897 is entitled: "An act to amend an act entitled, 'An act to establish a tax on collateral inheritances, bequest, and devises, to provide for its collection, and to direct the disposition of the proceeds,' approved March 23, 1893." It amends section 1 of the act of 1893 by including among those who are exempt from the tax the niece or nephew, when a resident of this state, along with

certain classes of corporations, of which the above-named university is one. Such amendatory act contains an independent section, numbered 2, reading as follows: "The exemptions contained in this act shall apply to all property which has passed by will, succession or transfer, since the approval of the act of which this act is amendatory, except in those cases where the tax has been paid to the treasurer of the proper county." It is claimed on the part of the appellants that the appeal herein must be determined in accordance with the act of 1893, as amended, referring, in support of such contention, to *First Nat. Bank v. Henderson*, 101 Cal. 307, and other cases in the same line. Such decisions are to the effect that in certain cases where, subsequent to the appeal, matters arise affecting the same, upon proper suggestion and proof of such matters they will be considered by the appellate court; specially is this so when the action is of a penal character, as it was in the Henderson case.

On the other hand, it is contended upon the part of the respondent that the amendatory act in question, so far as it attempts to relieve these appellants, and other beneficiaries similarly situated, from the conditions or obligations contained in the act of 1893, being in effect a relinquishment to them of the sums due the state under said act, is unconstitutional and void.

It will be seen by the express terms of the act of 1893 all taxes imposed thereby "shall be due and payable at the death of the decedent." And also that such taxes "shall be immediately due and payable to the treasurer of the proper county."

By section 25, article IV, of the constitution, it is declared: "The legislature shall not pass local or special laws in the following enumerated cases, that is to say: . . . . 15. Refunding money paid unto the state treasury. . . . . 17. Releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or person to this state, or to any municipal corporation therein." In answer to the foregoing provisions of the constitution, it may be claimed that the act in question is not local or special legislation, and in form it may not be so. But the framers of the constitution, and the people who adopted it, did not hedge about the leg-

islature with such restraints in the matter of conferring favors, or making gifts or donations by special and local legislation, and at the same time leave the door wide open for similar abuses to enter under the guise of general legislation. By section 22 of the same article the legislature is prohibited from making any grant or donation of property to any institution not under the exclusive management and control of the state, except institutions conducted for the care and support of orphans and half-orphans and aged indigent persons, and in such excepted cases reserving to the state the right of visitation. By section 31 of said article it is declared, among other restrictions imposed upon the legislature: "Nor shall it have the power to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; provided, that nothing in this section shall prevent the legislature granting aid pursuant to section 22 of this article."

In answer to the contention on the part of the respondent that by the amendatory act of 1897 it is attempted to give or donate public money or thing of value, appellants' counsel say: "That the state never had possession of any part of the 'accumulations or acquisitions' of Leland Stanford, deceased; . . . . and he (respondent) has not shown how the state could give away what it never had." In other words, it is claimed that one not in the possession of property is not the owner of it. The law of 1893 repeatedly declares that the portion coming to the state "shall be due and payable at the death of the decedent." And it is further provided that from that time until paid over in the course of administration the sum so due the state shall bear interest, and interest shall be paid on the sum so due the state. It would be absurd to exact interest for the detention or use of money or property not belonging to the party who demands it. It is elementary law that the right of inheritance, including the designation of heirs and the portions which the several heirs shall receive, as well as the right of testamentary disposition, are entirely matters of statutory enactment, and within the control of the legislature. It is only by virtue of the statute that an heir is entitled to receive any of his ancestor's estate; and the legislature can provide that

the whole or only a portion shall go to the heirs or other bene-
ficiaries upon the death of the ancestor.    This being so, and
the legislature in this case having determined that ninety-five
per cent of the decedent's estate may go to his heirs and bene-
ficiaries, and that five per cent be retained to the state, it is
too clear for argument that this five per cent vested in the
state at the same time that the ninety-five per cent vested in
the heirs or other beneficiaries.    "An estate is vested when
there is an immediate right of present enjoyment, or a pres-
ent fixed right of future enjoyment."    (Kent's Commentaries,
202.)    The state here, from the death of the decedent, had a
present fixed right of future enjoyment to the five per cent of
his estate.    This is property or a thing of value belonging to the
state.

The following from the Civil Code is merely reciting the
common law: "The ownership of a thing is the right of one
or more persons to possess and use it to the exclusion of others.
In this code the thing of which there  may be ownership is
called 'property.' "    (Civ. Code, sec. 654.)    "There may be own-
ership of all inanimate things which are capable of appropria-
tion or of manual delivery; of all domestic animals; of all ob-
ligations; of such products of labor or skill, as the composition of
an author, goodwill of a business, trademarks and signs; and of
rights created or granted by statute."    (Civ. Code, sec. 655.)
It is, therefore, not the possession alone, but the right to pos-
sess which  constitutes the ownership; and  ownership may be
"of rights created or granted by statute," as the case here.    It
would be altogether a new definition in the law to hold that
one who had not obtained possession of  a thing or had parted
with its possession could not be the owner of such thing.    This
would be contrary to the teachings of elementary law, which
recognizes a right in action as well as a right in possession.    The
rule contended for would make ownership depend altogether
upon strength and agility in obtaining and holding possession
of things.

The purpose of the act of 1897, as appears by its title, was
merely to amend the act of 1893.    Section 1 of the latter act
amends section 1 of the act of 1893 by re-enacting said section
at length, as required by the constitution.    Thereafter is added

to the act of 1897 the independent section 2, which attempts to release the payment of the taxes imposed by the act of 1893, except such as have already been paid over to the treasurer of the proper county.

Passing consideration of the question whether this section is not invalid because not embraced in the title of the act, and for the further reason that it in effect amends other sections of the act of 1893 without re-enacting them, it would strike the ordinary mind as a strange piece of legislation. The one who had been prompt in complying with the law and paid into the county treasury what belongs to the state is punished for his good conduct by retaining the money so paid, whereas he who has refused to obey the law is rewarded by giving or releasing to him that which belongs to the state, and which he unjustly withheld.

The object of this unjust discrimination is apparent. To take public funds from the treasury and give them away would be a more bald and palpable violation of the constitution than to arrest such funds in transit and return them or give them away. The latter, however, is only an indirect mode of accomplishing the same result; but, in law, that which cannot be done directly may not be done indirectly. The funds in question here were never in the possession of the appellants, but in the possession of the administratrix of the estate as an agent under the law to hand them over to the state as the owner thereof.

It is said, however, on behalf of appellants, that the legislature may not only amend but repeal the law altogether, in which case there would be no means of obtaining possession of the sums due the state not already turned over. The legislature might, perhaps, abolish or repeal all laws for the collection of debts; this, however, would not have the effect of paying or discharging the debts, or in the least impair the obligation to pay them. Property rights and obligations would remain as before. These, by fundamental law, are placed beyond the reach of legislative interference.

In substance, if not in form, to turn over the fund in question belonging to the state to the appellants would be to make a gift or donation of the same, and the law regards substance rather than form.

We are, therefore, of the opinion that to give retroactive effect to the law of 1897 would conflict with the provisions of the constitution prohibiting the legislature from making any gift or donation of any public money or thing of value.

The amendatory act of 1899 (Stats. 1899, p. 101), passed after the rehearing was granted herein, has no application in this case; by its terms it applies only to such property as has passed since the first amendatory act.

We quite agree with the appellant's counsel that "an heir or legatee must take his estate on such conditions as at the time the state may have imposed"; and that subsequent legislation could not affect such vested right. And this rule, as already held, applies equally to the state, whose right to the fund in question accrued under the act of 1893.

Order affirmed.

Temple, J., Henshaw, J., Garoutte, J., and Beatty, C. J., concurred.

HARRISON, J., dissenting.—I dissent. After the appeal herein had been taken the legislature at its next session passed an act, March 9, 1897 (Stats. 1897, p. 77), amending section 1 of the collateral inheritance act, approved March 23, 1893, by including among those who are exempt from the tax "niece or nephew when a resident of this state," together with certain classes of corporations, of which the above-named university is one, and provided that the exemption should apply to all cases arising subsequent to the passage of the original act, "except in those cases where the tax has been paid to the treasurer of the proper county."

1. The appeal herein must be determined in accordance with the law as it now exists, and not as it stood at the time the court made the order appealed from. (*First Nat. Bank v. Henderson*, 101 Cal. 307.)

2. The power of the legislature to determine whether to impose a succession tax or an excise tax upon the right of inheritance, as well as its right to determine upon which heirs or legatees of a decedent such a tax shall be imposed, was held in *Wilmerding's Estate*, 117 Cal. 281, to be plenary; and any statute enacted for this purpose may be amended equally with any other

statute. The legislature has the same power to add other classes to those who are to be exempted from the tax by an amendment to the original act as it would have had to exempt them from the tax in the original statute. The respondent does not controvert the effect of the amendment upon the estates of persons dying subsequent to its enactment, but insists that the provision in the second section of the act extending the exemption to cases arising prior to its enactment, when the tax has not been already paid, is in violation of the sixteenth subdivision of section 25, article IV, of the constitution of this state, by which the legislature is prohibited from passing local or special laws "releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or person in this state, or to any municipal corporation therein."

The right of the legislature to repeal the entire act cannot be questioned, and upon such repeal without any saving clause there would be no statute authorizing the collection of any portion of the tax then unpaid, and the tax could not be collected. If the legislature was of the opinion that the tax ought not to have been imposed upon the nephews and nieces, it had the same power to repeal that portion of the statute authorizing the collection from them of the tax then imposed as it had to exempt them from the payment of the tax. Such a statute is neither a local nor a special act. It extends to every part of the state, and applies to every person within the class. A classification of the persons thus to be exempted from the collection of the taxes previously imposed is no more a special act than the same classification of those upon whom the tax is to be imposed, or who are to be exempt from its payment; and, whether the legislature takes away the power of collecting the tax by direct words to that effect, or by a declaration that the persons in the class shall be exempt from its payment, is immaterial. In *Montague v. State*, 54 Md. 481, the legislature of Maryland had, by an amendment to the statute, included the "husband" in the exempted classes, and provided that the exemption should apply in all cases where the tax had not been actually paid. In passing upon the question here presented, the court reached the same conclusion as above, saying: "If the legislature is satisfied that a given tax is no longer necessary, that it is unjust, that a change of cir-

cumstances requires its repeal, that public policy demands that the repeal should be prompt, should give instant relief, and should therefore extend to all who had not yet actually paid, the legislature has in its discretion the constitutional right so to enact, without being at the same time compelled to embarrass the treasury by a sweeping restitution to all who had paid the tax from the time of its imposition. Under some circumstances, such a retrospective exemption might be highly expedient, and under others not. The question is one of policy for the legislature, and not one of law for the courts." It was further objected in that case, as by the respondent here, that the tax claimed from the appellant had become a specific, ascertained debt due from him to the state, and that the act exempting the husband from its payment was void under a provision of the constitution of that state similar to the above subdivision of section 25, forbidding the general assembly from passing local or special laws releasing persons from their debts or obligations to the state; but it was held that this provision of the constitution did not apply to a public general law releasing persons from their debts or obligations to the state, but that the inhibition was directed to "local" or "special" laws, and that the law under consideration was neither local or special.

McFarland, J., being disqualified, did not participate in the decision.