[L. A. No. 1870. In Bank.—August 10, 1906.]

## OSCAR A. TRIPPET, Executor, etc., Appellant, v. STATE OF CALIFORNIA, Respondent.

TAXATION—COLLATERAL INHERITANCES AND BEQUESTS—VESTED RIGHT OF STATE—CONSTITUTIONAL LAW.—The tax imposed by the act of March 23, 1893, and the acts amendatory thereof, upon collateral inheritances and bequests, gave to the state a right which vested immediately upon the death of the decedent, which cannot be surrendered by subsequent legislative act, or by a repeal of the law under which the right became vested. Such surrender would be a gift or donation from the state in violation of section 31 of article IV of the constitution.

ID.—CASE AFFIRMED.—The decision of this court in *Estate of Stanford,* 126 Cal. 112, [54 Pac. 259, 58 Pac. 462], is affirmed.

ID.—DUE PROCESS OF LAW.—The act of 1893 is not unconstitutional as depriving the heirs of property ''without due process of law'' contrary to the fourteenth amendment of the constitution of the United States. The statute provides for an appraisement after notice to all persons known to have a claim or interest in the property. The mere fact that the state has a vested right to its proportion of the gift or inheritance, prior to the appraisement, does not deprive the beneficiary or heir of any substantial right, where the law affords him a right to be heard as to the amount of the tax before it is collected or paid.

ID.—REPEAL OF MEANS OF ENFORCEMENT—ACTION BY HEIRS TO QUIET TITLE.—The question whether the act of 1905 has repealed all means of enforcing the tax vested under the act of 1893, can only be decided when the state seeks to enforce the same. An heir, upon whose interest the tax was imposed, cannot maintain against the state an action affirmatively to quiet his title against the state, whether· or not there remains a legal method for its enforcement, without paying the claim.

APPEAL from a judgment of the Superior Court of San Diego County. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

L. L. Boone, and Oscar H. Trippet, for Appellant; and Wilson & Wilson, S. F. Leib, and Garoutte & Goodwin, *Amici Curiæ,* also for Appellant.

The repeal of the act of 1893 without any saving clause, was effective, and the tax thereunder cannot be collected.

(*Estate of Stanford,* 126 Cal. 122, 54 Pac. 259, 58 Pac. 462, per Harrison, J.; *Napa State Hospital* v. *Flaherty,* 134 Cal. 316, 317, 66 Pac. 322; *Santa Monica* v. *Gudinger,* 137 Cal. 658,. 70 Pac. 732; *Flannigan* v. *Sierra County,* 196 U. S. 556, 25 Sup. Ct. 314; *People* v. *Frisbie,* 26 Cal. 140; *Spears* v. *Modoc County,* 101 Cal. 304, 305, 35 Pac. 869; *Hemstreet* v. *Wassum,* 49 Cal. 273; *Lamb* v. *Schottler,* 54 Cal. 319; 26 Am. & Eng. Ency. of Law, 2d ed., 745; *Gorley* v. *Sewell,* 77 Ind. 316; *Van Inwagen* v. *Chicago,* 61 Ill. 33; *Camden* v. *Allen,* 26 N. J. L. 399; *Duryee* v. *United States Credit System Co.,* 55 N. J. Eq. 311, 37 Atl. 155; 1 Desty on Taxation, p. 9; Sutherland on Statutory Construction, sec. 165.)

U. S. Webb, Attorney-General, and Cassius Carter, District Attorney of San Diego County, for Appellant.

The act of 1905 was a revision which is to be construed with former laws, and not an unqualified repeal thereof impairing previous rights. (*Estate of Prime,* 136 N. Y. 354, 32 N. E. 1091; *Pratt* v. *Swan,* 16 Utah,, 483, 52 Pac. 1094; Sutherland on Statutory Construction, 2d ed., sec. 238; Endlich on Interpretation of Statutes, 1888, sec. 190; *Steamship Co.* v. *Joliffe,* 2 Wall. 456; *Wright* v. *Oakley,* 5 Met. (Mass.) 406; *Bear Lake etc. Irr. Co.* v. *Garland,* 164 U. S. 11, 17 Sup. Ct. 7; *Campbell* v. *State,* 143 Cal. 627, 77 Pac. 674, 200 U. S. 87, 26 Sup. Ct. 182; *Howlett* v. *Cheetham,* 17 Wash. 626, 50 Pac. 522; *Smith* v. *People,* 47 N. Y. 330; *Sabin* v. *Connor,* 21 Fed. Cas. (No. 12197) 125.) The act does not impose an ordinary tax, but rather an excise tax or burden imposed upon the ʿright of taking property by will or descent. (Dos Passos on Inheritance Tax Law, 2d ed., secs. 2, 5; *Strode* v. *Commonwealth,* 52 Pa. St. 181; *Eyre* v. *Jacob,* 14 Gratt. 422, 73 Am. Dec. 367; *Scholey* v. *Rew,* 90 *U. S.* (23 Wall.) 341; *State* v. *Hamlin,* 86 Me. 495, 41 Am. St. Rep. 569, 25 L. R. A. 632, 30 Atl. 76; *State* v. *Dalrymple,* 70 Md. 294, 17 Atl. 82; *Mager* v. *Grim,* 8 How. 490; *In re Davis Estate,* 149 N. Y. 539, 44 N. E. 185; *In re Sherman,* 153 N. Y. 1, 46 N. E. 1032; *Kochersparger* v. *Drake,* 167 Ill. 122, 47 N. E. 321; *Wallace* v. *Myers,* 38 Fed. 184; *State* v. *Ferris,* 53 Ohio St. 314, 41 N. E. 579; *In re Inheritance Tax,* 23 Colo. 492, 48 Pac. 535; *Dixon* v. *Ricketts,* 26 Utah, 215, 72 Pac. 947; *United States* v. *Perkins,* 163 U. S. 625, 16 Sup. Ct.

1073; *Magoon* v. *Illinois etc. Bank*, 170 U. S. 288, 18 Sup.
Ct. 594; *Knowlton* v. *Moore*, 178 U. S. 41, 20 Sup. Ct. 747;
*In re Wilmerding*, 117 Cal. 284, 49 Pac. 181; *Estate of Stan-
ford*, 126 Cal. 119, 54 Pac. 259, 58 Pac. 462.)   To ˙repeal the
prior tax would violate section 31 of article IV of the consti-
tution.   (*Estate of Stanford*, 126 Cal. 118, 54 Pac. 259, 58
Pac. 462.)

  SLOSS, J.—This action was brought by the executor of
the will of Jacob Gruendike, deceased, pursuant to the pro-
visions of the act, approved March 20, 1905, (Stats. 1905,
p. 374,) authorizing the bringing of an action against the
state by the personal representatives of a decedent for the
purpose of having it determined that any property belonging
to such decedent's estate is not subject to any lien for taxes
under the act of 1893, and the acts amendatory thereof,
imposing a tax on collateral inheritances. (Stats. 1893, p. 193.)

  From the allegations of the complaint it appears that Jacob
Gruendike, a resident of San Diego County, died testate on
April 8, 1905, leaving estate in said county and elsewhere of
the value of between three hundred thousand and four hun-
dred thousand dollars.   On April 28, 1905, the superior
court of San Diego County duly admitted the decedent's will
to probate and appointed the plaintiff executor.   By the
will, which is set out in full in the complaint, the residue,
comprising nearly the whole of the estate, is given to the.
testator's living brothers, sisters, nephews, and nieces, and the
children of deceased nephews and nieces.   There are some
forty beneficiaries, each of whom, with two or three excep-
tions, takes under the will an interest of the value of from
seven thousand to ten thousand dollars.   The defendant
claims that all of the interests devised and bequeathed by
the will are subject to a tax under the act of March 23, 1893,
entitled ''An act to establish a tax on collateral inheritances,''
etc., and its various amendments, while the plaintiff claims,
and prays a decree accordingly, that all of the provisions of
this act have been repealed by an act approved March 20,
1905, (Stats. 1905, p. 341,) and that by such repeal the state
has lost any right which it may have had under the earlier act
to collect a tax.   (There are two acts approved, March 20,
1905, the one allowing the institution of such an action as

this, and the other imposing inheritance taxes and purporting to repeal the Collateral Inheritance Tax Law of 1893.)

It is alleged that prior to the repeal of the act of 1893, no proceedings had been taken for the appraisement under said act of any of the interests devised or bequeathed by the Gruendike will. The complaint further asserts a right arising under the federal constitution by alleging that the act of 1893 has been construed by this court as vesting "a five-percent interest in the state at the death of the decedent regardless as to whether or not there has been any appraisement and notice to the parties in interest, and before the ascertainment of the amount of the inheritance, devise or bequest," and that the act, as so construed, deprives persons of property without due process of law.

A general demurrer to the complaint having been sustained, and plaintiff declining to amend, judgment was entered for defendant. The appeal is from this judgment.

By its terms, the act of March 20, 1905, which, it is claimed, repealed the act of 1893, went into effect on July 1, 1905. Gruendike's death occurred on April 8, 1905, when the old law was still in force. Passing, for the moment, the constitutional point suggested above, the substantial, and indeed the only, question is, What was the effect of the act of 1905 on estates of persons dying before it went into effect, where no steps had been taken to collect the tax imposed by the law in force at the date of the death?

The act of March 23, 1893, was the first enactment in this state on the subject of inheritance taxes. It provided in section 1 that all property passing by will, or by the intestate laws of this state, or by an instrument made in contemplation of death, except to the use of the father, mother, wife, lawful issue, brother, sister, the wife or widow of a son, the husband of a daughter, the adopted child, or any lineal descendant of the decedent, or any corporations or institutions exempted from taxation, should be subject to a tax of five dollars on every hundred dollars of the market value of such property. Section 4 provided that all taxes imposed by the act should be "due and payable at the death of the decedent," and that interest from the date of such death should be collected in certain events. Other sections of the act provided for the appraisement of interests subject to the tax, for the duties

of executors, administrators, and public officers, and for other matters connected with the ascertainment, collection, and disposition of the tax. The act so passed has been repeatedly amended by succeeding legislatures (Stats. 1895, p. 33; Stats. 1897, p. 77; Stats. 1899, p. 101), the amendments of 1895 relating to appraisements and the duties of certain officers in the collection of the tax, and those of 1897 and 1899 altering the classes of persons or corporations exempt from the tax under section 1 of the act.

The legislature of 1905, instead of amending the old act, undertook to pass a new law covering the whole subject. By this law the old plan of a flat tax of five per cent is abandoned, and a sliding scale, ranging from one to fifteen per cent of the interest passing, is adopted, the rates varying according to the remoteness of kinship and the amount of the inheritance or gift. The system of exemptions is also materially changed, no heirs or relatives of the deceased being absolutely exempt under the new law, while under all the prior enactments there was no tax on gifts to or inheritances by the father, mother, husband, wife, lawful issue, wife, or widow of a son, husband of a daughter, adopted child, or legitimate lineal descendant of the decedent. In other respects the new law re-enacted substantially the provisions of the old with regard to the appraisement of interests subject to the tax, time and manner of payment, penalties and interest, duties of officers, and all machinery connected with the ascertainment and collection of the tax. Section 27 of the new act reads as follows: ''An act entitled 'An act to establish a tax on collateral inheritances, bequests and devises, to provide for its collection, and to direct the disposition of the proceeds,' approved March 23, 1893, and all amendments thereto, and all acts and parts of acts in conflict with this act are hereby expressly repealed.'' There is in the later act no clause expressly saving or preserving rights accrued under the old.

The argument of the appellant is that by the repeal of a law all inchoate rights existing under that law are ended, and that the right of the state to the tax in this case was inchoate, no steps for its appraisement and collection having been taken before the alleged repealing statute went into effect. The doctrine relied on, which is well established, is

stated by this court in *Napa State Hospital* v. *Flaherty,* 134 Cal. 315, [66 Pac. 326], in the following words: "It is a rule of almost universal application, that, where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause.". The applicability of the rule to the present case depends upon two conditions—1. That the statute creating the right be repealed; and 2. That, if repealed, the rights declared by it be inchoate, and not vested. It is urged by the state that, notwithstanding the explicit language of section 27 of the act of 1905, the act of 1893 is not thereby repealed *in toto;* that, as stated in Sutherland on Statutory Construction (2d ed., sec. 238), "Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time." Whether the authorities support this broad statement of the rule, and whether, if so, the act of 1905 should be deemed to have intended an absolute repeal of the act of 1893, are, however, questions which we do not deem it necessary to decide in this case, for the reason that this court in *Estate of Stanford,* 126 Cal. 112, [54 Pac. 259, 58 Pac. 462], has decided that the right of the state to the tax under the law of 1893 is, immediately upon the death of the decedent, a vested right which cannot be surrendered by legislative act.

In that case the decedent had died in June, 1893. Under the act of March 23, 1893, then in force, there was no exemption of legacies or devises to nephews, nieces, or educational institutions. Pending an appeal from an order directing the executrix to pay taxes on certain legacies to decedent's nephews and nieces resident in the state and to the trustees of the Leland Stanford Junior University, the legislature, in 1897, passed an act amending the act of March 23, 1893, by adding such nephews and nieces and educational institutions to the classes of beneficiaries exempted from the tax under section 1 of the act, and providing specifically that the additional exemption should apply to the estates of per-

sons who had died prior to the passage of the amending act. (Stats. 1897, p. 77.) In holding that the attempt to give the exemptions a retroactive effect was in conflict with several provisions of the state constitution, and therefore ineffectual, the court used the following language: "In answer to the contention on the part of the respondent that by the amendatory act of 1897 it is attempted to give or donate public money or thing of value, appellants' counsel say: 'That the state has never had possession of any part of the accumulations or acquisitions of Leland Stanford, deceased; . . . and he [respondent] has not shown how the state could give away what it never had.' In other words, it is claimed that one not in the possession of property is not the owner of it. The law of 1893 repeatedly declares that the portion coming to the state 'shall be due and payable at the death of the decedent.' And it is further provided that from that time until paid over in the course of administration the sum so due the state shall bear interest, and interest shall be paid on the sum so due the state. It would be absurd to exact interest for the detention or use of money or property not belonging to the party who demands it. It is elementary law that the right of inheritance, including the designation of heirs and the portions which the several heirs shall receive, as well as the right of testamentary disposition, are entirely matters of statutory enactment, and within the control of the legislature. It is only by virtue of the statute that an heir is entitled to receive any of his ancestor's estate; and the legislature can provide that the whole or only a portion shall go to the heirs or other beneficiaries upon the death of the ancestor. This being so, and the legislature in this case having determined that ninety-five per cent of the decedent's estate may go to his heirs and beneficiaries and five per cent be retained to the state, it is too clear for argument that this five per cent vested in the state at the same time that the ninety-five per cent vested in the heirs or other beneficiaries. 'An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment.' (Kent's Commentaries, 202.) The state here, from the death of the decedent, had a present fixed right of future enjoyment to the five per cent of his estate. This is property or a thing of value belonging to the state. . . .

"In substance, if not in form, to turn over the fund in question belonging to the state to the appellants would be to make a gift or donation of the same, and the law regards substance rather than form. We are, therefore, of the opinion that to give retroactive effect to the law of 1897 would conflict with the provisions of the constitution prohibiting the legislature from making any gift or donation of any public money or thing of value."

It was also held that the amending act of 1897 was in conflict with certain provisions of the state constitution regarding special legislation. It is urged on behalf of appellant that the present case is distinguishable from the Stanford case, in that the act of 1905 was an absolute repeal and not a mere amendment, and that here (as is claimed) no question of special legislation arises. But we are unable to find any valid ground of discrimination. We have quoted at some length from the opinion in the Stanford case in order to show that the act of 1897 was held invalid upon the grounds,—1. That under the law of 1893 an interest amounting to five per cent of certain specified inheritances, devises, or bequests, vested in the state upon the death of the decedent; and 2. That where such interest had once vested in the state, it was beyond the power of the legislature to make a gratuitous surrender of the interest to the beneficiary. These propositions, if sound, are as applicable to this as to the Stanford case. If the surrender, without consideration, of a right vested in the state be a gift or donation, within the meaning of section 31 of article IV of the constitution, such surrender must be as obnoxious to the constitutional provision when sought to be accomplished by means of a repeal of the law creating the right as by any other method. Nor can .it be said that what was laid down in the Stanford case as to the "gift or donation" clause was *dictum*. While the holding of the invalidity of the amending act of 1897 might have been placed solely on the ground of "special legislation," it was not. The enactment was held to violate two provisions of the constitution, and the ruling as to one was as necessary to the decision as the ruling regarding the other.

The various counsel who have filed briefs on behalf of appellant argue, with much force and ability, that the court was in error in holding, in the Stanford case, that the law

of 1893 created a vested right in the state upon the death of the decedent. Without reviewing the arguments advanced, and the authorities cited, we deem it sufficient to say that the Stanford case was decided by the court in Bank, upon a rehearing ordered after a contrary conclusion had been reached in Department. The case was elaborately argued and carefully considered, and we adhere to the doctrine declared.

There remains to be considered the point that the act of 1893, as construed by this court, deprives plaintiff of property "without due process of law," contrary to the provisions of article XIV of the amendments to the constitution of the United States. The proposition, as stated by appellant, is that "in *ad valorem* tax matters, the due process provision of the federal constitution requires that the state must provide a means of ascertaining the amount of the tax, and for notice and appraisement. Until these things are done, the state has no power to take private property." But if this principle be applicable to a tax like the one under consideration, the law of 1893 did provide a means of ascertaining the amount of the tax and for notice and appraisement. Section 11 provides that when the value of an interest subject to the payment of the tax is uncertain, the court shall appoint an appraiser, whose duty it shall be to make an appraisement after having given notice to all persons known to have or claim an interest in the property, of the time and place at which he will appraise such property. The tax is to be fixed by the court from the report made to it by such appraiser. (Stats. 1895, p. 34.) The beneficiary under the will, or the heir, is in no way deprived of the benefit of these provisions because the statute enacts or the court holds that the state's right to the tax vests on the decedent's death. The right, although vested, is still, as to actual collection, subject to the appraisement provided for. There is no legal inconsistency in the idea of a right being vested, although the possession may be postponed or contingent upon the performance of certain acts. An apt example is to be found in the right of the heir himself. It is the settled law of this state that upon the death of an owner of property, intestate, his estate at once descends to and vests in his heirs, subject to the possession of the administrator for all purposes of administration. (Civ. Code, sec. 1384; *Bates v. Howard,* 105 Cal. 173, [38 Pac. 715] ; *Brenham* v. *Story,*

CXLIX Cal. 34

39 Cal. 179.) But the heir must await the completion of administration and the determination of his heirship by the decree of distribution before he can enter upon the enjoyment and possession of his vested right. So here, the fact that the right of the state to the tax is vested on the death of the decedent does not carry with it the right to take possession of the interest so vested without performance of the conditions (of appraisement, notice, etc.) to which its right of possession may be subject. The mere fact that the right of the state to its proportion of the gift or inheritance is declared to vest prior to any appraisement does not deprive the beneficiary or heir of any substantial right where the law affords him the opportunity to be heard as to the amount of the tax before there is any actual collection or payment thereof.

For the purposes of the present case, it is not necessary to express an opinion regarding appellant's further point that, assuming the act of 1893 to have given to the state a vested interest which could not be surrendered, the act of 1905 repealed all provisions for notice and appraisement as to estates of persons dying before July 1, 1905, and left a bare right in the state without any constitutional means of enforcing it. The plaintiff comes into court seeking, as against the state, a determination that it has no right to any tax. The state is not here seeking any affirmative relief against the plaintiff. The judgment merely denies plaintiff the decree sought by him declaring that the defendant has no right to any tax. Since, as we have seen, the defendant has a vested right to such tax, an adjudication that the estate is free from any claim for such tax would be manifestly improper. Whether or not there remains a legal method of collecting the tax will be a question for decision when the state seeks to enforce its right. This is substantially an action to quiet title. (Sec. 2 of act of March 20, 1905, Stats. 1905, p. 375.) If there be a valid claim against such property, the plaintiff cannot, in this equitable proceeding, quiet his title against such claim, even though the same may be unenforceable by legal proceedings, without paying the claim. The case is analogous to that of a mortgagor who seeks to quiet his title against a mortgagee whose right to foreclosure is barred by lapse of time. It has been repeatedly held that he cannot do this without paying the amount due on the mortgage. (*Booth* v. *Hoskins,* 75 Cal.

276, [17 Pac. 225]; *Spect* v. *Spect,* 88 Cal. 437, [26 Pac. 203];
*Brandt* v. *Thompson,* 91 Cal. 458, [27 Pac. 763].)
The judgment is affirmed.

Shaw, J., Henshaw, J., Lorigan, J., Angellotti, J., and
Beatty, C. J., concurred.