[Civ. No. 309.   Third Appellate District.—November 7, 1907.]

In the Matter of the Estate of H. J. LANDER, Deceased. STATE et al., Appellants, v. GEO. H. BACHER, Administrator, and HENRIETTA S. E. HOFFMAN and ANTOINETTE S. A. ARCULARIUS, Heirs at Law, Respondents.

ESTATES OF DECEASED PERSONS—COLLATERAL INHERITANCE TAX—VESTED RIGHT AT DEATH—REPEAL OF LAW—RIGHT UNAFFECTED.—The right to a collateral inheritance tax under the act of March 23, 1893, which became vested at the death of a deceased person, could not be surrendered by a subsequent legislative act, and is unaffected by the repeal of that act by the statute of 1905, and the estate cannot be distributed to the heirs without payment of the vested tax, which must appear in the final account of the administrator.

APPEAL from a decree of the Superior Court of Plumas County distributing the estate of a deceased person to collateral heirs, without payment of a collateral inheritance tax. John E. Raker, Judge.

The main facts are stated in the opinion of the court.   Three notices of appeal were filed, one by the state, one by the county treasurer, and one by the district attorney.

U. S. Webb, Attorney General, and L. N. Peter, District Attorney, for Appellants.

W. W. Kellogg, for Administrator, Respondent.

Garoutte & Goodwin, and J. O. Moncure, for Heirs, Respondents.

CHIPMAN, P. J.—Deceased died intestate in the county of Plumas on June 19, 1904, leaving him surviving two sisters, who were his sole heirs.   On July 21, 1905, the administrator of his estate filed in the superior court of said county his final account and petition for distribution of said estate.   On July 31, 1905, and prior to the hearing of said matter, the district attorney was notified by the county treasurer that the tax on collateral inheritance due from said estate had not

been paid, and on the same day the district attorney filed in said matter and presented to the court his protest against the settlement of said account and the distribution of said estate until said tax was paid. No steps prior to said last-named date had been taken to collect said tax, and no part thereof had been paid. The court made its order settling the account and directing distribution of the whole estate without the payment of said tax.

The appeal is from the order settling the final account and also from the decree of distribution. The lower court held "that the act of March 23, 1893 (Stats. 1893, p. 193), and the several acts amendatory thereof, had been repealed, and there was no inheritance tax due or payable, and that there was no inheritance tax law in force by which any inheritance tax could be collected in said estate or ordered paid by the court."

It would seem that the trial court held that the act of March 20, 1905, Stats. 1905, page 341 (which will be referred to as the repealing act), repealed the act of 1893 and destroyed the remedies provided in the latter act for the collection of taxes falling due thereunder prior to such repeal, applying the rule laid down in *Napa State Hospital* v. *Flaherty,* 134 Cal. 315, [66 Pac. 322].

There is no brief filed by respondent, and we are without any assistance from him.

The facts here are substantially the same as in the recent case of *Trippet* v. *State of California,* 149 Cal. 521, [86 Pac. 1084], *i. e.,* the deceased died before the act of 1905 went into effect and no steps had been taken by the state to collect the tax imposed by the law in force at the date of the death. It was held in the Trippet case, *supra,* affirming the doctrine laid down in *Estate of Stanford,* 126 Cal. 112, [54 Pac. 259, 58 Pac. 462], "that the right of the state to the tax under the law of 1893 is, immediately upon the death of the decedent, a vested right which cannot be surrendered by legislative act." The Trippet case was an action to have determined that the property belonging to the estate of the decedent was not subject to any lien for taxes under the act of 1893, and acts amendatory thereof, imposing a tax on collateral inheritances. Such an action was authorized by the repealing act of March 20, 1905. In the Stanford case it was held that to give retroactive effect to the amendatory act of 1897 (Stats. 1897, p. 77)

would be in substance, if not in form, to turn over the fund in question belonging to the state to the appellants, and would be to make a gift or donation of the same which would conflict with the provisions of the constitution prohibiting the legislature from making any gift or donation of any public money or thing of value.

The attorney general makes the point that while the repealing act of 1905 purports to repeal the former act it is but a reenactment of the first, with certain amendments, and therefore only repeals so much of the original act as is inconsistent with it; that the provisions of the old act, which are carried into the later act without change, are to be considered, not as repealed, but as continued in force and to have been the law all along. (Citing Sutherland's Statutory Construction, 2d ed., secs. 237, 238, 273; Endlich on Interpretation of Statutes, ed. of 1888, sec. 490, and cases supporting the text.) And it is pointed out that section 8 of the act of 1893, which provides that the estate shall not be distributed until the administrator produces a receipt showing that the tax had been paid, is also found in section 11 of the repealing act of 1905.

In reply to the anticipated contention that the repealing act contained no saving clause and repealed absolutely the original act, and therefore the state cannot recover the tax, it is claimed that the legislature passed another act on the same day on the same subject (Stats. 1905, p. 374), which furnishes the same protection that would follow from the insertion of a saving clause in the repealing act itself; that the two acts are *in pari materia*, and must be construed together as one act. (Citing *People* v. *Jackson*, 30 Cal. 428; Black on Interpretation of Laws, sec. 86; *Smith* v. *People*, 47 N. Y. 338, and other cases.) The New York case above cited discusses at much length the doctrine contended for.

It is further contended by the attorney general that the rule announced in *Napa State Hospital* v. *Flaherty*, 134 Cal. 315, [66 Pac. 322], does not apply to taxes, citing *City of Oakland* v. *Whipple*, 44 Cal. 303, where it was held that where taxes are levied under a law which is repealed by a subsequent act, unless it be made apparent by clear and unequivocal language that the repealing act was intended to have a retrospective operation, it will be inferred that the intent of the legislature was that the taxes should be collected in accordance with the law in force at the time they were levied. To like

effect are cited *State* v. *Sloss,* 83 Ala. 94, [3 South. 745] ; *State* v. *Certain Lands,* 40 Ark. 38, and other cases.

And finally it is contended that if the legislature contemplated by the two acts of 1905 to give to the heirs of decedent the five per cent of the estate which had previously vested in the state of California, such legislation would be obnoxious to section 31, article IV, of the constitution. (*Estate of Stanford,* 126 Cal. 112, [54 Pac. 259, 58 Pac. 452] ; *Trippet* v. *State of California,* 149 Cal. 521, [86 Pac. 1084].)

There is much force in these contentions. We think, however, that it is not necessary to pass upon all of them. In the Trippet case it was claimed, among other things, that the repealing act of 1905 left a bare right in the state without any constitutional means of enforcing it. The court said: ''The plaintiff comes into court seeking, as against the state, a determination that it has no right to any tax. The state is not here seeking affirmative relief against the plaintiff. The judgment merely denies plaintiff the decree sought by him, declaring that the defendant has no right to any tax. Since, as we have seen, the defendant has a vested right to such tax, an adjudication that the estate is free from any claim for such tax would be manifestly improper. Whether or not there remains a legal method of collecting the tax will be a question for decision when the state seeks to enforce its right.'' The court then shows that the plaintiff cannot, in the action, quiet his title without paying the claim of the state; that the case is analogous to that of a mortgagor who seeks to quiet his title against a mortgagee where the right to foreclose is barred by the lapse of time, which he may not do without paying the amount due on the mortgage. It seems to us that the principle of that case should apply here, though the question arises in another form of action or proceeding. If, as was held in the Trippet case, the right of the state vested at the death of the decedent, the state had a property interest in the estate which could no more be taken and given to an heir than could the interest of one heir be taken without his consent and given to another. The decree of distribution was entered August 2, 1905. The repealing act went into effect July 1, 1905, so that when the petition for distribution was filed (July 21, 1905) and when the decree was entered the statute (section 11 of the repealing act) provided that the estate shall not be distributed until the administrator has produced a receipt showing pay-

ment of the tax. The court, then, by its decree not only deprived the state of a vested right, but in doing so proceeded in disregard of the plain provisions of the existing statute. The action of the court was doubtless based upon the erroneous assumption that the repealing act took away or was a renunciation of the right of the state, and hence it was unnecessary for the administrator to exhibit a receipt showing payment of a claim that had no legal existence. But we have seen that the right of the state to five per cent of the estate vested at the death of the decedent, and that the legislature had no power, if it had intended to do so (which is by no means conceded), to make a donation of this interest in the estate to the heirs of the decedent, by the indirect means of repealing the act under which the right vested. It seems to us quite clear that if the administrator in this case or the heirs of the decedent could not have the title to the estate quieted, without first paying the tax, as was decided in the Trippet case, it would be a reproach to the law that would allow them to accomplish this result by proceedings in probate. But the decision of the Trippet case rests not alone upon the equitable form of the action, but also upon the principle that it would be inequitable to allow recovery against the state at all.

It is not within our province to suggest the steps necessary for the state to take should it seek affirmatively to enforce payment. But that the entire estate cannot be distributed to the heirs without payment of the collateral inheritance tax being first made we have no doubt. The final account sets forth that the balance of the estate on hand is money, except a mortgage note of $200.00, and that the estate is in condition to be closed. We do not understand that any objection is here made to the allowance and approval of the final account except as it may be affected by the question disposed of in this opinion. Before, however, the final account can be said to show that the estate is in condition to be closed it should appear therefrom that the collateral inheritance tax has been paid.

The order settling and allowing the final account and the decree of distribution are reversed.

Hart, J., and Burnett, J., concurred.