[L. A. No. 21776.   In Bank.   June 17, 1952.]

L. J. ALLEN, Respondent, v. FRANCHISE TAX BOARD, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine and Edward Sumner, Deputy Attorneys General, for Appellant.

Harold E. Prudhon for Respondent.

SHENK, J.—The plaintiff brought this action against the Franchise Tax Board, substituted for Charles J. McColgan, Franchise Tax Commissioner, to recover taxes paid under

protest. The plaintiff had judgment for the sum prayed for and the defendant appealed.

The controversy presents the question of the validity of the operation retroactively of section 7.1 added to the Personal Income Tax Act in 1941 (Stats. 1941, p. 471; *cf.* Rev. & Tax. Code, § 17054.) Prior to applicable amendments persons who received a lump sum as compensation for services rendered over a period of years and who reported income on a cash basis, paid the tax on the accumulated amount in the year in which it was received.

In 1939 the Congress added section 107 to the Internal Revenue Code (Rev. Act of 1939, § 220a). By that section compensation for personal services rendered over a period of five or more years received in any taxable year beginning after December 31, 1938, was taxed at no more "than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period."

In 1941 the Legislature added section 7.1 to the State Personal Income Tax Act to achieve uniformity with the federal income tax law. The section provided that the tax attributable to compensation for personal services earned over a period of five or more years which was received in any taxable year beginning after December 31, 1939, should likewise not be greater than the aggregate of the taxes attributable to that compensation had it been received in equal portions in each of the years included in that period. The effect of the enactments was to permit the accumulated compensation paid in a lump sum to be spread over the years in which it was earned.

The urgency declaration in the California legislation provided that the statute should take effect immediately, that is on February 4, 1941.

The issues in the case were tried on stipulated facts. In March, 1933, the plaintiff, an attorney, was engaged to take legal steps to determine the interest of his client in an oil lease. As compensation for his services he was to receive one-half of a claimed 5 per cent oil royalty and the accumulations thereof when his client's title should be established. Proceedings were accordingly commenced and pursued through judgments, appeals and affirmances. The litigation was finally determined in favor of his client in April, 1940. At that time the plaintiff received the agreed compensation which consisted of $32,178.64 representing one-half of the accumu-

lated royalties and an assignment of one-half of the 5 per cent royalty interest. In reporting his income for the calendar year 1940 the plaintiff invoked the provisions of section 7.1 of the Personal Income Tax Act and paid the tax computed on the income when spread equally over the years in which it was earned. Subsequently he was notified of an additional assessment demanded on the ground that section 7.1 of the Personal Income Tax Law could not constitutionally be retroactively applied to the taxable year 1940. The plaintiff paid the amount of the additional assessment under protest and brought this action to recover the amount paid.

The defendant contends that the retroactive application as provided in the act would violate section 31 of article IV of the California Constitution which prohibits a gift of public money. The argument is that the plaintiff's liability for the 1940 income tax accrued as of December 31, 1940, and that the lessening of the plaintiff's liability for that year amounts to a relinquishment on the part of the state of a portion of taxes as to which its right had vested.

It is not questioned that the statute was intended to have application to the taxable years beginning with January 1, 1940. The defendant questions its constitutional application to any taxable year which ended prior to the effective date of the act, February 4, 1941. It is also not questioned that the statute may constitutionally apply to a taxable year commencing in a year ending after the effective date of the act; but it is urged that it may not be considered applicable to the calendar year 1940 or any fiscal year commencing between January 1 and February 4, 1940.

It may not rightly be contended that the urgency clause is insufficient to permit the immediate effectiveness of the enactment. Section 2 contains the legislative statement of the facts concerning the urgency. It is stated that in 1940 many taxpayers received lump sum payments of compensation for services rendered over the preceding five years; that because of the graduated tax rates they would be paying higher taxes on their income than others who received compensation in the year in which the services were rendered; that the disparity in the treatment of taxpayers receiving such accumulated compensation gave rise to an economic inequality which was declared to affect directly the public peace, health and safety; also because the due date for payment of the 1940 income tax fell on April 15, 1941, immediate effect was deemed imperative.

There is no merit in the defendant's contention that the legislative declaration was a statement of the public use of state moneys. The declaration was nothing more than the statement of the facts deemed to constitute the urgency necessary for immediate effectiveness pursuant to section 1 of article IV of the Constitution. ■ But the position of the plaintiff that the enactment does not constitute a gift of public moneys is tenable and supports the disposition of this appeal adversely to the contentions of the defendant on that phase of the case.

■ There is no provision in the Constitution forbidding retroactive effect of tax measures in proper cases. The effectiveness of statutes imposing taxes on income already earned, in the absence of considerations of arbitrary or capricious action, has been deemed constitutionally valid. (*Fernandez* v. *Wiener,* 326 U.S. 340, 355 [66 S.Ct. 178, 90 L.Ed. 116]; *Welch* v. *Henry,* 305 U.S. 134 [59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142] and note page 1153 [118 A.L.R.] with citation of cases; *Cooper* v. *United States,* 280 U.S. 409 [50 S.Ct. 164, 74 L.Ed. 516].) In those cases the rights of the taxpayer in the light of the constitutional requirements of equal protection and due process were considered. Under the state Constitution prohibiting gifts of public money, the question is whether the Legislature had the power to enact a provision, the effect of which would be to reduce the amount of the tax on income otherwise returnable by the plaintiff in 1940.

The defendant does not question the policy and practice to cause state legislation and regulation to conform with federal laws on income tax matters. (See *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428].) However, in contending that the application of the statute to the calendar year 1940 as in this case amounts to a gift of public moneys for the private benefit of the taxpayer, the defendant assumes that the state's right in the tax vested at the close of that taxable year. The defendant relies on cases involving retroactivity in tax legislation other than that relating to income tax matters.

In *Estate of Stanford,* 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788], it was held that the right to the statutory inheritance tax vested in the state when the tax was declared to be due and payable, namely at the death of the decedent, and that an amendment which reduced the tax could not apply retroactively where the decedent died prior to the effective

date of the act. The state's ownership was held not to depend on actual possession of the funds produced by the tax but on the right to collect the tax which right had accrued and was vested when it was due and payable. Any other conclusion was held to contravene the constitutional provision prohibiting a gift of public moneys. That decision has been uniformly followed or not questioned in subsequent cases. (*Trippet* v. *State*, 149 Cal. 521 [86 P. 1084, 8 L.R.A. N.S. 1210]; *Estate of Martin*, 153 Cal. 225 [94 P. 1053]; *Estate of Kennedy*, 157 Cal. 517, 527 [108 P. 280, 29 L.R.A. N.S. 428]; *Estate of Lander*, 6 Cal.App. 744 [93 P. 202].) In relation to transfers *inter vivos*, the state's right became a lien on the property at the date of the taxable transfer and was held to vest as of that time, although payable later. (*Estate of Potter*, 188 Cal. 55 [204 P. 826].)

The principle that on pain of offending the constitutional prohibition the Legislature cannot surrender the vested right of the state to a tax does not control the outcome in this case favorably to the defendant's contentions. In making these contentions the defendant has mistakenly assumed that accrued liability of the plaintiff resolved the question of when the state's right to the income tax vested. Following the cases relied on, the right of the state does not vest until the tax is due and payable which as here was not until April 15th following the close of the preceding calendar year. True the plaintiff cannot escape liability for the tax on income earned in 1940. The amount of the income may be determinable at the close of the year. But that fact does not control the time when the state's right to the tax becomes vested. As stated that right does not mature until the tax becomes due and payable.

We are not here concerned with the question whether the Legislature may change the rate of the tax after the close of the taxable year. (*Cf. Fullerton Oil Co.* v. *Johnson*, 2 Cal. 2d 162, 176 [39 P.2d 796].) It may be assumed that under the state organic law changes in the rates may be enacted only in the taxable year to which they apply. No such changes were made directly. And it must likewise be concluded that they were not made indirectly. Our concern here is with retroactive changes relating to the personal income base to which unchanged rates apply.

The changed method of returning accumulated income concerns only certain taxpayers who are thereby placed in the same position as other taxpayers. It cannot be denied

that the result is to reach all of the income received by the affected taxpayers and, as in the case of other taxpayers, at the rates applicable in the years in which it was earned. No income is freed from tax liability. Taxpayers in the situation of the plaintiff are in effect merely given the same opportunity as all other taxpayers to return their income for taxation in the year in which it was earned. The Legislature has said that the tax produced at the rate so applicable is all that the state is entitled to and that the taxpayers affected by the change should be treated as are taxpayers who return compensation in the year in which it was earned. It is not inconceivable that a similar result might be accomplished where a taxpayer returns his income on an accrual basis. The Legislature has in that wise permitted the taxpayer to return his accumulated earned compensation on an accrual basis where it was not otherwise feasible to do so. The cases relied on by the defendant were similarly held inapplicable where the legislative objective was to regulate the procedures by making a change in the method of collecting the state's tax revenues. (*Gartner* v. *Roth*, 26 Cal.2d 184 [157 P.2d 361].) There the Legislature was concerned with replacing delinquent taxpayers on an equality by restoring a right originally possessed but which had been lost to some of them for a time. This court recognized that the state was entitled only to its tax moneys, that it was not giving away state property, and that the retroactive application of the act involved did not impair the state's right to payment of delinquent taxes.

There can be no constitutional objection to the result which affects only the tax base as distinguished from a tax rate change where, as in this case, the provision was enacted prior to the time the tax should become due and payable. The provision was enacted and became effective prior to the time when the state's right to receive or collect the tax accrued. There is therefore no relinquishment of a vested state right.

From the foregoing it is concluded that by the express application of the 1941 provision to taxable years commencing January 1, 1940, there is no remission of taxes.

The remaining questions relate to the valuation of the royalty interest received and to the deductibility of 27½ per cent of the accumulated compensation as a depletion allowance.

■ Section 8(j) of the Personal Income Tax Act (*cf.* Rev. & Tax. Code, § 17314) stated the allowable deductions including that for depletion in the case of oil and gas wells. Section 9.5(b)(3) (*cf.* Rev. & Tax. Code, § 17816) provided that the allowance for such depletion should be 27½ per cent of the gross income from the property during the taxable year, with exceptions not material here. For present purposes the provisions are noted as substantially similar to the related federal income tax provisions. The trial court allowed as a deduction for depletion 27½ per cent of the cash compensation received by the plaintiff. It must be concluded that the deduction was not allowable on the facts of this case. To allow it would result in an unauthorized deduction from the amount received by the plaintiff as compensation for services rendered. The accumulated compensation received by the plaintiff in 1940 was not paid to him as royalties on an interest owned by him. His client received double the amount as royalties on a 5 per cent leasehold interest as to which his title was established in the final outcome of the litigation prosecuted on his behalf by the plaintiff. An amount equal to one-half of those royalties together with one-half of the 5 per cent royalty interest was received by the plaintiff as compensation for services rendered. Only from and after the time of that payment did the plaintiff become the owner of an economic interest in the leasehold. And only on royalties received on his interest from and after that time can he be said to have an interest as to which the depletion allowance may be attributable. Since he had no capital investment in the interest at and during the time of the performance of the services or until 1940 he had no interest subject to depletion. (*Kirby Petroleum Co.* v. *Commissioner of Internal Revenue,* 326 U.S. 599 [66 S.Ct. 409, 90 L.Ed. 343]; *Helvering* v. *O'Donnell,* 303 U.S. 370 [58 S.Ct. 619, 82 L.Ed. 903]; *Allen* v. *Commissioner,* 5 T.C. 1232.) The plaintiff's attempted distinction based on the fact that the courts in the cited cases referred to an economic interest in the "oil in place," which is not the nature of the property interest under California law, is unavailing. The time when the plaintiff became the owner of an economic interest in the property involved, whatever its nature, is the material and determinative factor. That question was involved and was decided adversely to him in his case before the federal tax court (*Allen* v. *Commissioner, supra,* 5 T.C. 1232). The

foregoing decisions are persuasive that the trial court erroneously allowed depletion.

■■ The defendant contends that the record does not support the trial court's finding that the 2½ per cent royalty interest received by the plaintiff was of no value. The plaintiff included the 2½ per cent royalty interest as part of his 1940 income but as of no value. In assessing the additional tax for the year 1940 the defendant had given it a valuation of $3,483.90. On the trial the plaintiff introduced evidence of shutting down the wells, their relative nonproductiveness, and the consequent low valuation. The defendant relied on the valuation of $3,483.90 found by the federal tax court in *Allen* v. *Commissioner, supra,* based on the evidence before that court. The defendant contends that the holding in that case has a binding effect here; also that the testimony of the plaintiff and his expert witness was inherently unsound and is insufficient to support the trial court's finding as to the value of the interest. The trial court could proceed only on the evidence before it. The decision of the federal court in the Allen case on the factual issues has no binding force here. That decision is controlling only as to questions of law under the doctrine of *stare decisis*. Since there is support in the record for the trial court's finding of no value as to the royalty interest the finding will not be disturbed.

The judgment is reversed with directions to the trial court to disallow depletion and reduce the amount of the judgment accordingly; with costs to the plaintiff.

Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.