LELAND J. ALLEN AND LUCY A. ALLEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1223. Promulgated December 12, 1945.

*Robert M. L. Baker, Esq.,* and *Leland J. Allen, Esq.,* for the petitioners.

*Earl C. Crouter, Esq.,* for the respondent.

OPINION.

ARNOLD, *Judge*: There are four issues for determination: (1) Whether the 2½ percent royalty interest received by Allen was received in 1936 or 1940; (2) the value of the interest when it was received; (3) whether Allen received in 1940 at least 95 percent of his entire fee for services in the Sutphin litigation; and (4) whether Allen was entitled to a deduction for depletion with respect to the cash proceeds received in 1940.

The respondent determined that the royalty interest received by Allen was 1940 income. Respondent argues, however, that the interest may have been received in 1936, citing *Commissioner* v. *Alamitos Land Co.*, 112 Fed. (2d) 648; certiorari denied, 311 U. S. 679, in which it was held that amounts received in satisfaction of a judgment were income when received, even though appeal was taken and the money was subject to return in the event of reversal. Petitioner testified that he prepared the assignment of the interest and handed it to his client in 1936 and that in 1940 his client delivered the executed assignment to him. The assignment was executed in 1936 and recorded in 1940. Since Allen was obligated to prosecute his client's case to a final conclusion, he was not entitled to receive the assignment until 1940, when the litigation establishing that right was concluded. We conclude that Allen received the 2½ percent interest in 1940.

The respondent determined that such interest had a value of $3,483.90 in 1940; Allen contends that it had no value at that time. A petroleum geologist testified to the effect that upon the leasehold were 2 wells drilled in 1933 and 1934; that both were whipstocked

wells; that in 1940 the oil production from one well was 25,079 barrels and from the other was 60,735 barrels; and that in April 1940 the casing of the well which had produced over 70 percent of the oil from the leasehold had collapsed and the well was paying from $500 to $800 per month in gas; and the other was producing about $5,000 or $6,000 per month in gas. It was indicated that the oil production had declined for the 2 or 3 years preceding 1940, and subsequent to the time Allen received the assignment in April 1940 the wells produced no more oil, but produced some gas. The geologist indicated that the market price of an interest in oil in a producing leasehold might approximate 2½ to 3 years' oil production, but that whipstocked wells generally do not have a long life and interests in such wells are not readily marketable. He placed a value on the petitioner's 2½ percent interest of $202.08 as to one well and $84.43 as to the other.

The geologist's estimate of income from gas of $5,500 to $6,800 per month for the leasehold would indicate that a 2½ percent interest would realize $137 to $170 per month. Two months' production at the rate existing in April 1940 would amount to $274 to $340, or approximately the valuation of $286.51 given by the geologist. Two years' production at the same rate would amount to $3,288 to $4,080, approximately the respondent's valuation of $3,483.90 as to Allen's interest. The respondent's valuation is prima facie correct. The valuation placed by the geologist on the petitioner's interest is supported by the testimony that both wells were whipstocked, the casing of one well had collapsed, and the oil flow of both had ceased. On the other hand, the testimony does not show how long the gas production of the wells might be expected to continue or the probable value thereof. Nor does it establish that no further oil production could be had from the leasehold if the existing wells were repaired or a new well were drilled. There was no testimony respecting the value of any oil that might remain or respecting the potential future oil production of the leasehold. The evidence is not sufficient to convince us that the respondent erred. We conclude that the 2½ percent interest received by Allen in April 1940 had a value of $3,483.90.

Respondent determined that Allen was not entitled to compute under section 107 of the code [1] his tax for 1940 attributable to the legal fee

[1] SEC. 107. I. R. C., as added by sec. 220 (a) Revenue Act of 1939:

"SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF FIVE YEARS OR MORE.

"In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b, paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period."

received in that year for services performed for I. O. Sutphin over the period 1933 to 1940. Where applicable, section 107 limits the tax attributable to compensation received in one year for personal services over a period of at least five years to the aggregate of the taxes attributable to such compensation had it been received in equal portions in each year in the period. The section is applicable if at least 95 percent of the compensation is received on the completion of the services. Respondent contends that this requirement was not met, in that in 1936 Allen received a part of the fee in excess of 5 percent of the total fee.

In 1936 petitioner collected $7,804.43 on behalf of his client pursuant to a judgment. He testified that out of this sum he paid over $4,638.22 to his client, and $2,100 to various persons who had testified or had rendered other assistance in the case, retaining $1,066.21 in his possession.

Respondent argues (1) that petitioner, by virtue of his 50 percent contingent fee agreement, had the right to $3,902.21, half of the sum recovered in 1936; (2) in the alternative, that petitioner received $3,166.21 of this recovery (the amount remaining after he paid $4,638.-22 to his client) and that the $2,100 paid the witnesses was paid by Allen on his own account and out of his own fee; or (3), as a next alternative, that the witnesses were paid as much for Allen's benefit as for that of his client and that $1,050, half the $2,100, should be included as part of the fee received by him in 1936.

The argument goes to the nature of the petitioner's interest in the amount recovered in 1936, which in turn depends upon the fee agreement. Allen testified that in 1933 he agreed to take his client's case on a contingent fee basis, whereby in the event that he finally established his client's rights to a 5 percent oil royalty he was to receive half of his client's interest and half of any accumulations on that interest, if there was production. At the time in 1933 there had been no production. In 1936, when the collection of $7,804.43 was effected, Allen turned over to his client $4,638.22 and was instructed by his client to pay for the services of persons who had testified and rendered other assistance in the case.

The agreement, as it is stated by Allen, does not appear to have been specific about litigation expenses, but in the absence of a contrary agreement such expenses are generally considered those of the client and do not constitute a part of the attorney's fee. 7 C. J. S., Attorney and Client, § 180. Sutphin paid the filing charges, court costs, and printer's bills as the litigation proceeded, but was not in a position to pay the witnesses' fees and fees for other services until the collection was effected in 1936. Sutphin was consulted about the fees and authorized or directed their payment from the funds when they were collected. We think these fees were expenses of the client and were paid

from the client's funds, rather than on Allen's account. Respondent cites *Davis* v. *Mackay*, 50 Cal. App. 251; 194 Pac. 738, in which it was held that an attorney had no power to bind his client, without express authority, upon a contract for employment of a detective, or at least for compensation beyond a reasonable amount. Respondent argues that Allen had no authority to engage a witness, McClelland, who, in addition to giving testimony, kept Allen informed of the moves of his client's adversaries. In the cited case the client repudiated the contract and the detective was unable to recover from the client. The conclusion is not pertinent here, where Sutphin approved the action of Allen in engaging McClelland and directed that he be paid the amount asked for his services. The fee paid McClelland was paid on account of Sutphin, rather than Allen.

Allen's right to the fee was contingent upon the ultimate success of the litigation. The litigation was not ended until 1940 [2] and hence the fee was not earned until that year. Had the decision gone against Sutphin, the entire amount of this collection would have to be paid over by Sutphin to the adverse party and Allen would have earned no fee. The amount of $1,066.21 which Allen retained in 1936 was not earned until 1940 and meanwhile was held by him in trust for his client. In 1940 he acquired the right to retain it as part of his fee. Even if the $1,066.21 retained by him in 1936 was at that time a part of his fee, it amounted to less than 5 percent of the entire fee.

The cases cited by respondent are not in point. In *Hoffman* v. *Vallejo*, 45 Cal. 564, attorneys engaged under a contingent fee agreement brought suit to enforce a claim of their client. The latter secretly compromised the suit and invested the proceeds in land. It was held that the attorneys, as against their client, were equitable owners of a part of the proceeds and of the land in which such proceeds were invested. In that case the contract was concluded by reason of the client's action and the attorneys' rights then vested. This does not support the proposition that Allen in 1936 had a vested interest in the amount collected in that year, for then his contract was not performed. In *Bartlett* v. *Odd Fellows' Savings Bank*, 79 Cal. 218; 21 Pac. 743, an attorney who had a contingent fee agreement was discharged by his client, who later recovered money as a result of the attorney's services. It was held that the attorney's right to a fee, being contingent upon a recovery, vested when the recovery was effected. In that case, too, the contract was completed when the recovery was had.

While Allen was interested in having the litigation successfully concluded, since his fee depended upon that result, he did not prior to 1940 have a vested property right in the sum collected in 1936.

---

[2] The litigation is reported at 59 Pac. (2d) 611; 87 Pac. (2d) 87; 99 Pac. (2d) 652, 656: and 101 Pac. (2d) 497.

We conclude that Allen received in 1940 at least 95 percent of his entire fee in the Sutphin's litigation and that he is entitled to compute under section 107 the tax for 1940 attributable to the fee received in that year.

In computing his tax petitioner took a depletion deduction of 27½ percent of the cash fee received in 1940. Respondent disallowed this deduction. Whether petitioner is entitled to such a deduction depends upon whether he had an economic interest in the oil in place. *Helvering* v. *O'Donnell*, 303 U. S. 370, and cases there cited. Oil and gas reserves, like other minerals in place, are recognized as wasting assets. A deduction for depletion of such assets is allowed to one who has a capital investment in the minerals in place. The deduction is intended as compensation for the capital assets consumed in the production of income through the severance of the minerals. The holder of a royalty interest has an economic interest which entitles him to a deduction for depletion. *Anderson* v. *Helvering*, 310 U. S. 304. Allen's client held such a royalty interest. In 1933 Allen by contract acquired the right, contingent upon successful completion of his services, to receive a fee consisting of two parts, (1) a part of his client's royalty interest, and (2) any accumulations on that part of the interest, if there was production. Allen made no capital investment in the oil and gas in place in 1933. The conditions upon which his rights depended were satisfied in 1940 and at that time his interest in the property and his right to any accumulations from production from that interest became fixed. The right to accumulations was the right to a cash sum measured by half the accumulated royalties upon his client's 5 percent interest. Petitioner did not have an economic interest in the oil in place during the years prior to 1940. His client had such an interest to the extent of the entire 5 percent share. In 1940 petitioner acquired an economic interest in any oil or gas thereafter extracted, but the assignment could not convey an economic interest with respect to the prior production represented by the accumulations. This was not subject to depletion. Cf. *Massey* v. *Commissioner*, 143 Fed. (2d) 429, affirming B. T. A. memorandum opinion on this point. In the cases cited by petitioner in support of his position [3] the taxpayers had acquired present interests in the property by contract for the performance of services to be rendered. Allen, however, had a contract to receive an interest at a future date if his services met with success.

We conclude that petitioner is not entitled to the deduction for depletion.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[3] *Dearing* v. *Commissioner*, 102 Fed. (2d) 91, affirming 36 B. T. A. 843 ; *F. H. E. Oil Co.*, 41 B. T. A. 130 ; *Hugh Hodges Drilling Co.*, 43 B. T. A. 1045 ; *Rowan Drilling Co.*, 130 Fed. (2d) 62, affirming 44 B. T. A. 189.