OPINION. Van Fossan, Judge: The first issue is whether or not the oil royalties paid to the petitioner in 1941, pursuant to the decree of the Supreme Court of Michigan, constitute taxable income to it. The petitioner contends that the royalty interests reserved by the fee owner-lessors were simply rights to receive income if, as, and when realized; that, under the pooling agreements, they assigned to the petitioner the right to receive a portion of this income; and that the entire transaction thus constituted an anticipatory assignment of future income which, when realized, was taxable to the fee owner-lessors under the doctrine of Lucas v. Earl, 281 U. S. 111, and related cases, and not to the petitioner. Whether or not the amounts in question are income taxable to the petitioner depends upon the nature of the rights reserved by the fee owner-lessors and transferred by them to the trustees, who, in turn, assigned them to the petitioner. Under the terms of the various leases, the fee owner-lessors reserved to themselves a one-eighth royalty interest in the oil and gas produced and saved from the leased premises. It is now firmly established that the owner of a royalty interest in oil lands has an economic interest in the oil in place to the extent of his royalty interest so as to entitle him to a deduction for depletion on royalties and bonuses received. Kirby Petroleum Co. v. Commissioner, 326 U. S. 599. Thus in Palmer v. Bender, 287 U. S. 551, the Supreme Court said: * * * the lessor’s right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if by virtue of the leasing transaction ne has retained a right to share in the oil produced. If so, he has an economic interest in the oil, in place, which is depleted by production. * * * And in Thomas v. Perkins, 301 U. S. 655, the Court said: Thus in thát case [Palmer v. Bender, supra] we held assignors’ mere stipulation for royalty out of oil operated to save to them an economic interest in the oil sufficient to entitle them to deduct from their income derived from the oil an allowance for depletion. If Palmer had retained no interest in the oil, he would have been entitled to no deduction on account of depletion. Ownership was essential. * * * [Italics supplied.] It is thus manifest that what the fee owner-lessors retained under the leases was an economic interest in the oil in place in the property which produced the royalty income. It was this same economic interest in the oil to the extent of one-half thereof which was transferred to the petitioner under the pooling agreements. The granting clause of these agreements provided, in part, as follows: The first parties do hereby transfer, assign and set over to the said second parties, as trustees, all the right, title, interest, claim or demand of the first parties in and to all royalty interest in oil and/or gas now or hereafter discovered and/or produced from the real estate hereinbefore described to the extent, however, of a one-half of the royalty interest of the first parties only, that is to say, to the extent of an undivided one-sixteenth interest in and to all the oil and/or gas produced from the aforesaid lands * * *. That the petitioner was the assignee not merely of future income, but of the property which produced the income, is further demonstrated by the decree of the Supreme Court of Michigan, which contained the following provision: * * * That said Porter Royalty Pool, Inc., a Michigan corporation, is the sole and only owner of all of said royalty rights transferred by said royalty pool agreements and of all royalty oil (or the proceeds of the sale thereof) realized from said pooled royalty rights out of oil produced from any of the premises described in said royalty pool agreements. From all this we thihk it abundantly clear that the petitioner, by transfer and assignment, became the owner of one-half of the royalty interests reserved under the leases, which interests were economic interests in the oil in place and of which the royalty payments here in question constituted the proceeds. Consequently, the petitioner, being the owner of the property which produced the income, it follows that it is taxable on the income arising therefrom. Cf. Helvering v. Horst, 311 U. S. 112. See also Leland J. Allen, 5 T. C. 1232. As an alternative contention, although it is not so designated on brief, the petitioner contends that the sums in question were not its income, but were the income of its stockholders. It contends that, under its articles of incorporation and bylaws, the petitioner was empowered only to collect the royalties and was required to distribute them monthly to the stockholders after deducting expenses and the sum of $200, which was required to be retained in the treasury; that it could use the royalties for no purposes of its own; could not engage in business; and that, therefore, it had no proprietary right, title, or interest to the moneys received, but received them only as trustees or agents for its stockholders. The petitioner relies on Moro Realty Holding Corporation, 25 B. T. A. 1135, in support of its contention. In that case a corporation was organized for the sole purpose of holding title to realty for the benefit of members of a certain syndicate. We held that, under the facts there present, the corporation was “a legal shell holding bare record title only,” that all beneficial interest in the property was in the syndicate members, and that gain on the sale of the property was taxable to them and not to the corporation. The Moro case, although of doubtful authority since the decision of the Supreme Court in Moline Properties, Inc. v. Commissioner, infra, is in any event readily distinguishable from the case before us. As we pointed out in our opinion in the Moro case, supra, “The corporation was formed solely for the purpose of holding title, issued no stock or other evidences of beneficial interest, held no corporate meetings, had no paid-in cash capital, paid no dividends and exercised none of the usual rights or privileges of corporate ownership.” Here, on the other hand, the petitioner was regularly created and organized. Its bylaws provide for the election of officers and directors and the holding of annual meetings. The royalty payments could be distributed only by vote of the board of directors and such distributions were made solely on the basis of stockholdings. We have examined the other cases cited by the petitioner, but find them to be of no value as precedents. Thus, San Joaquin Valley Poultry Producers’ Association v. Commissioner, 136 Fed. (2d) 382, involved the narrow question of whether or not a cooperative marketing association organized to market the produce of its members and to refund all profits to them on a patronage basis, could have any income of its own where this was forbidden by the statutes under which it was organized, its articles of incorporation and its bylaws. United Cooperatives, Inc., 4 T. C. 93, involved the right of a cooperative association to a deduction for patronage dividends paid to its members during the taxable years. In our opinion this phase of the case is controlled by Moline Properties, Inc. v. Commissioner, 319 U. S. 436. There a corporation was organized by one Thompson to be used as a security device in connection with certain realty owned by him. The property was conveyed to the corporation, which assumed the mortgages thereon. Until 1933 the only business done by the corporation was the assumption of an obligation of Thompson to the original creditor, the defense of certain condemnation proceedings, and the institution of a suit to remove certain restrictions from the property. In 1934 a part of the property was leased for use as a parking lot. The property was sold in parcels in 1934, 1935, and 1936 and Thompson sought to include the gain on the 1935 and 1936 sales as his own rather than the corporation’s. In holding that the gain was that of the corporation, the Supreme Court said: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator’s personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. [Citations.] In Burnet v. Commonwealth Imp. Co., 287 U. S. 415, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to Its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice oí the advantage of incorporation to do business, it was held, required the acceptance of the tax disadvantages. [[Image here]] Petitioner advances what we think is basically the same argument of identity in a different form. It urges that it is a mere agent for its sole stockholder and “therefore the same tax consequences follow as in the case of any corporate agent or fiduciary.” There was no actual contract of agency, nor the usual incidents of an agency relationship. Surely the mere fact of the existence of a corporation with one or several stockholders, regardless of the corporation’s business activities, does not make the corporation the agent of its stockholders. Therefore the question of agency or not depends upon the same legal issues as does the question of identity previously discussed. Burnet v. Commonwealth Imp. Co. supra, 287 U. S. 418, 419, 420. In the instant case we think the activities of the petitioner were sufficient to constitute the carrying on of business within the rule of Moline Properies, Inc. v. Commissioner, supra. As in the cited case, there is no evidence of a contract of agency expressed or implied between the petitioner and its stockholders. In point of fact the contrary is true, since the petitioner carried on litigation for eight years in the courts of Michigan, the ultimate effect of which was to establish its absolute title to the royalty interests as against its stockholders. The petitioner’s contention must be rejected. Finally, the petitioner contends that, if the sums in question were its property, they constituted capital to it and not income, upon the theory that they were received in payment for the petitioner’s capital stock. This contention is wholly without merit. We shall not discuss it, therefore, except to point out that the record amply demonstrates that the consideration for the stock was, in the case of the fee owner-lessors, the assignment of the royalty interests and, in the case of the promoters, their services in organizing the pool. It is our conclusion, and we hold, that the royalty payments constituted taxable income to the petitioner. In view of our decision on the first issue, we must also determine whether or not the petitioner is entitled to a deduction from gross income on account of attorneys’ fees and legal expenses incurred and paid in 1940 and 1941 in connection with the litigation in the Michigan courts. On its return for 1941 the petitioner claimed a deduction of $148,659 for such fees and expenses. Of this amount, it now claims a deduction of only $128,484, the amount actually paid in that year. The petitioner contends that the expenses so incurred and paid were ordinary and necessary business expenses for which it is entitled to a deduction under section 23 (a) (1) of the code. The respondent has determined and here contends that the expenditures were capital in nature and that no deduction can be allowed therefor. It is our opinion that the amounts in question constituted capital expenditures and that no deduction may be had therefor by the petitioner. The petitioner contends that the action in the state court involved merely its right to receive the royalty income. We think, however, that there was at stake, not only the right to receive the income, but primarily the petitioner’s title to the royalty interests themselves. Had the decision been adverse to the petitioner, the pooling agreements would have been canceled and the petitioner would have lost all right, title, and interest in and to the royalty interests and, as a natural consequence, to the royalty payments. The decree of the Michigan Supreme Court firmly established the petitioner’s title to such royalty interests, providing that the petitioner was “the sole and only owner of all of said royalty rights” and that the stockholders “have no right, title, interest, claim or demand in or to any of the oil royalties * * * save only in their capacity as stockholders * * Since the litigation involved the defense of the petitioner’s title to the royalty rights, no deduction is allowable with respect to the legal expenses and attorneys’ fees incident thereto. “The authorities quite generally hold that expenditures made in defense of a title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses.” Farmer v. Commissioner, 126 Fed. (2d) 542; Murphy Oil Co. v. Burnet, 55 Fed. (2d) 17; Bowers v. Lumpkin, 140 Fed. (2d) 927. Decision will he entered wider Rule 50.