[No. 13357.    In Bank. — February 28, 1890.]

YOSEMITE STAGE AND TURNPIKÉ COMPANY, PETITIONER, v. JOHN P. DUNN, CONTROLLER, ETC., RESPONDENT.

CONSTITUTIONAL LAW — GIFT BY LEGISLATURE — DEFINITION. — To constitute a gift by the legislature within the inhibition of section 31 of article 4 of the constitution, there must be a gratuitous transfer of the property of the state, made voluntarily and without consideration.

PURCHASE OF UNEXPIRED LEASE OF YOSEMITE AND WAWONA ROAD. — The act of the legislature (Stats. 1888, p. 142) providing for the purchase of the unexpired lease of the Yosemite and Wawona road, and making an appropriation therefor, is constitutional, and such appropriation does not constitute a gift, the lease having been made within the general power of the board of commissioners appointed to manage the Yosemite Valley and Mariposa Big Tree Grove.

ID. — POWERS OF COMMISSIONERS OF YOSEMITE VALLEY — LEASE OF TOLL-ROADS — RENEWAL OF LEASE — JURISDICTION OF SUPERVISORS — PUBLIC HIGHWAYS. — The roads laid out within the grant made by act of Congress to the state of California of the Yosemite Valley and Mariposa Big Tree Grove, under the authority of the board of commissioners provided for in the act, are the property of the state, subject to the exclusive jurisdiction of such board of commissioners, who have general power to make leases thereof, not exceeding ten years, and may renew a lease thereof for the same period. Such roads do not fall within the jurisdiction of the supervisors, or become free public highways by the expiration of the first ten-year lease, by operation of section 2619 of the Political Code.

APPLICATION for a writ of mandate. The facts are stated in the opinion.

*Lloyd & Wood*, for Petitioner.

*Attorney-General Johnson*, for Respondent.

FOOTE, C.—This is an application for a writ of mandate to compel the controller of the state to draw his warrant upon the state treasurer for the sum of eight thousand dollars in favor of the petitioner.

The controller refuses to draw the warrant, because, as he alleges, the legislature had no power, under the constitution, to pass the law, by virtue of which the petitioner claims the right to draw the eight thousand dollars from the treasury.

It is contended by the counsel for the respondent that the money voted to the petitioner, by the act in question, is a gift, and as such is inhibited by article 4, section 31, of the state constitution.

The portion of the constitution under consideration is:—

" Sec. 31.   The legislature shall have no power, . . . . nor shall it have power, to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual, municipal, or other corporation whatever."

The Civil Code, section 1146, says: " A gift is a transfer of personal property, made voluntarily, and without consideration."

To be a gift, this voluntary transfer must be gratuitous,—a handing over to the donee something for nothing.

Upon the face of the act of the legislature upon which the petitioner's contention is made, it appears that the legislature appropriated eight thousand dollars *to purchase* from the Yosemite Stage and Turnpike Company its road running from the line of the grant to the floor of the valley, by Inspiration and Artists' points, a distance of eight miles, and known as the Yosemite and Wawona road.   (Acts 1888, p. 142.)   It is clear, therefore, that, so far as the legislature was concerned, its intention was to purchase a road in which it believed the petitioners had an interest, at least, worth purchas-

ing, and that no gratuitous donation was intended to be made.

Was one in fact made? The agreed facts in the case are: "1. That heretofore, and on the first day of January, 1875, the commissioners to manage the Yosemite Valley and Mariposa Big Tree Grove made and entered into a contract and agreement with Washburn, Chapman & Co., hereto attached and made part hereof, marked "Exhibit A"; 2. That said Washburn, Chapman & Co. complied with their part of said contract or agreement, and fully performed the same, and constructed the road therein mentioned, and expended thereon the sum of sixteen thousand dollars, or thereabouts, and collected and received the tolls therein mentioned; 3. That the petitioner, the Yosemite Stage and Turnpike Company, has succeeded by assignments and conveyances from Washburn, Chapman & Co. to all and every their rights and privileges under the lease and contract aforesaid; and said Washburn, Chapman & Co., and Yosemite and Turnpike Company, have at all times, since its completion, been in the possession of said road, and using the same in accordance with the terms of the several leases or contracts herein set forth; 4. That on December 17, 1885, and before the expiration of the aforesaid lease, the commissioners to manage the Yosemite Valley and the Mariposa Big Tree Grove passed a resolution extending the terms of said lease, a copy whereof is hereto attached, marked "Exhibit B"; and on June 6, 1888, said commissioners made and entered into the contract or lease hereto attached, marked "Exhibit C"; 5. That said Yosemite Stage and Turnpike Company fully performed its part of said contracts or agreements, and is now in possession and use of said road therein mentioned, and has heretofore maintained and is now maintaining the same; 6. That after the passage of the act of the legislature, in the petition mentioned, said Yosemite and turnpike company made, executed, and

tendered its deed for said road and its release of said contract to the state of California in due form of law, and the board of examiners of said state thereupon accepted said tender, and audited, allowed, and ordered paid to said Yosemite Stage and Turnpike Company the sum of money appropriated by said act; 7. That upon demand being made thereafter, said John P. Dunn, controller of the state of California, refused to draw the warrant mentioned in said act."

It is contended by the counsel for the respondent that the petitioner had no right or interest whatever in the road attempted to be purchased and paid for by the legislature; that, having nothing to sell, or which could be bought from them, the voting to them of eight thousand dollars by legislative act was a gift pure and simple, and nothing else.

The first point which he makes in support of his contention is, that as the first ten-year lease expired in 1885, the turnpike road in possession of the lessees at once be-became, by operation of section 2619 of the Political Code, a free public highway.

We do not think this view of the matter is correct, as no portion of the Yosemite grant is subject to the general road laws of the state.

The act of Congress under which the land included in the grant was made to the state of California is in this language:—

"That there shall be, and is hereby, granted to the state of California the 'cleft' or 'gorge' in the granite peak of the Sierra Nevada Mountains, situated in the county of Mariposa, in the state aforesaid, . . . . with the stipulation, nevertheless, that the said state shall accept this grant upon the express conditions that the premises shall be held for public use, resort, and recreation; shall be inalienable for all time; but leases not exceeding ten years may be granted for portions of said premises. All incomes derived from leases of privileges

to be expended in the preservation and improvement of the property, or the roads leading thereto; . . . . the premises to be managed by the governor of the state, with eight other commissioners, to be appointed by the executive of California, and who shall receive no compensation for their services." (13 U. S. Stats. at Large, 323.)

The second section of the act, on the like terms and conditions, grants the land not to exceed four sections, embracing what is known as the Mariposa Big Tree Grant.

Thus it will be seen that by the terms of that act the grant was made to the state of California, to be put to a specific public use, and no other; it was to be managed by a board of commissioners, to whom were given certain defined and specific powers, to be exercised consistently with the conditions named in the grant. The roads laid out within the grant, being under the charge and supervision of the board of commissioners, were not to be managed as by a board of supervisors of a county, or a county and city, and the board of commissioners is not controlled by the state laws applicable to boards of supervisors. Hence the argument made for the respondent, that the commissioners "could not abandon the free public highways in the grant to any corporation," is without force; for the commissioners are expressly given the power by the act of Congress to lease portions of the premises, or grant for a period of time not exceeding ten years, and they are not confined by the act to the leasing of portions for any specific purpose named in the act. The power to lease portions of the premises for a period not exceeding ten years is a general one, so far as the purpose of the lease is concerned.

The roads laid out in the grant by authority of the commissioners are not subject to the jurisdiction of boards of supervisors; they are the property of the state, and subject to the jurisdiction and control of a particular body, viz., the board of commissioners, whose action

is controlled by the provisions of the act of Congress authorizing their appointment.

The state could not, under the terms of the act of Congress making the grant for a special public use, commit its management to any other body than the board of commissioners. (*Ashburner* v. *California*, 103 U. S. 575, 578, 579.)

If the commissioners are authorized to lease portions of the grant, and are not limited as to what use the leased premises may be allowed by them to be put, it is not perceived but what they had the power to make the leases in controversy. If they possessed this power, then it appears to us that the legislature might very well, if it desired to do so, in the interests of the state, buy out the interest of the petitioners under an unexpired lease, and that the purchase-money voted for that purpose was not a gift.

It appears, therefore, that the prayer of the petitioners should be granted, and we advise that a peremptory writ of mandate issue commanding the respondent to issue the warrant for eight thousand dollars, as prayed for.

GIBSON, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinon, the prayer of the petitioner is granted, and ordered a peremptory writ of mandate be issued commanding the respondent to issue the warrant for eight thousand dollars, as prayed for.

Fox, J., concurring.—I concur in the order for the writ. There was no provision in the original lease that the road should revert to the state at the expiration of the term, or ever, but there was a provision that the state, or the board of commissioners, might become the purchaser thereof whenever it should so elect. The state or board did not purchase, during the term, but permitted the petitioners to remain in possession for the time

being, and subsequently made to them a second lease for ten years. The board of commissioners, on behalf of the state, is now buying out the road, as it was originally provided it might do. I think they have the right to make the purchase; of the policy of doing it this court is not the judge.

SHARPSTEIN, J., concurred in the opinion of Mr. Justice Fox.

PATERSON, J., dissented.