In the Matter of Acquiring Title by the CITY OF NEW YORK to Certain Real Property Extending Northerly from the Southerly Side of Lafayette Avenue between Metcalf Avenue and Morrison Avenue to the Easterly Boundary of Bronx Park at a Point North of East 180th Street and West of Morris Park Avenue for the Bronx River Parkway, Southerly Extension; a Public Park Bounded by Watson Avenue, Noble Avenue, Gleason Avenue and Rosedale Avenue, and a Public Park Bounded by East 177th Street, Bronx River Avenue and Noble Avenue, in the Borough of The Bronx, City of New York, Duly Selected as Sites for Parkway and Park Purposes and Approved According to Law.

A. F. & G. REALTY CORPORATION and Others, and CITY BANK FARMERS TRUST COMPANY (Formerly Known as FARMERS LOAN AND TRUST COMPANY), as Trustee under Two Deeds of Trust Each Dated August 15th, 1919, Made by WILLIAM WALDORF ASTOR, and WILLIAM W. HOFFMAN, Claimants, Appellants; THE CITY OF NEW YORK, Respondent.

First Department, May 17, 1940.

*Bernard L. Bermant* of counsel [*Jacob W. Bermant* with him on the brief; *Skinner & Bermant,* attorneys for Rosedale Engineering Corp. and others, and *Mitchell, Taylor, Capron & Marsh,* attorneys for City Bank Farmers Trust Company and others], for the appellants.

*Paxton Blair* of counsel [*William A. Marks* and *Stanley Buchsbaum* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the respondent.

CALLAHAN, J.   This is an appeal by claimants in a condemnation proceeding which raises solely the question of the rate of interest to be paid by the city of New York on awards for property taken from the date of vesting of title to the time of the payment of the awards.   The proceedings were instituted by resolution of the board of estimate, dated March 31, 1938.   Title vested on April 25, 1938. A tentative decree fixing damage was entered on June 20, 1939, but the final decree was not signed until December 29, 1939.

In the meantime, on July 1, 1939, chapter 594 of the Laws of 1939, adding section 3-a to the General Municipal Law, became effective.   That statute provides as follows:

" § 3-a. Rate of interest on judgments and accrued claims against municipal corporations.   The rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed four per centum per annum. The term ' municipal corporation ' as used in this section shall mean and include a city, county, village, town, school district, or a special or public district organized for the purpose of financing the costs of public improvements."

We think that the sum to be awarded in condemnation proceedings as compensation for property taken is an " accrued claim " within this statute.

After the passage of the statute, a motion was made by the property owners (appellants) for orders directing the insertion in the final decree of a provision for interest on the respective awards. The property owners claimed that the rate they were entitled to be allowed was six per centum per annum from the date of vesting of title to the date of payment, and the city of New York claimed that the rate of interest should be four per centum per annum retroactively from the date of the vesting of title to the date of payment.

Special Term directed that interest be inserted in the final decree at the rate contended for by the city, *i. e.,* four per centum from the date of vesting of title, thus directing payment of interest at a rate less than six per centum retroactively from the date of vesting of title (April 25, 1938) to the date when the new statute became effective (July 1, 1939), and thereafter, until payment.

No proof was taken concerning what rate of interest would afford just compensation for the delay in paying the sum awarded. Special Term was of the view that the rate of interest to be paid was to be determined as of the date of the final decree, and cited as authority for the holding the case of *Salter* v. *Utica & Black River R. R. Co.* (86 N. Y. 401).

We think that this holding of Special Term was erroneous, and that, in the absence of proof requiring a different rate as just compensation, interest should have been awarded at the statutory rate of six per centum per annum up to the time of the change in the statute, and at the rate of four per centum per annum thereafter.

The right of property owners to just compensation for property taken is one guaranteed by the Federal and State Constitutions (U. S. Const. Fifth Amendt.; State Const. art. 1, § 7. See, also, *Jacobs* v. *United States*, 290 U. S. 13).

In the *Jacobs* case (*supra*), in referring to the amount to be paid as just compensation, the Supreme Court of the United States said (at p. 16): " The amount recoverable was just compensation, not inadequate compensation. * * * The owner is not limited to the value of the property at the time of the taking; ' he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.' Interest at a proper rate ' is a good measure by which to ascertain the amount so to be added.' *Seaboard Air Line R. Co.* v. *United States*, 261 U. S. 299, 306."

The *Jacobs* case (*supra*) further held that the right to just compensation could not be taken away by statute or qualified by the omission of a provision for interest in a statute, where such allowance was appropriate in order to make the compensation adequate. It held that section 177 of the Judicial Code (U. S. Code, tit. 28, § 284), declaring that no interest was to be allowed on any claim against the United States unless upon a contract expressly stipulating for the payment of interest, had no application to the sum to be awarded in condemnation, for the reason that the rule of just compensation applying in such proceedings might not be limited by statute.

*Seaboard Airline R. Co.* v. *United States* (261 U. S. 299) involved a suit for just compensation for land situated in South Carolina taken for the public defense. The judgment awarded was for the value of the land, with interest at the statutory rate fixed by the laws of South Carolina. It was held that the owner's right to just compensation, where his property was taken, did not depend on contract, express or implied. The right to compensation was said to rest upon constitutional provisions. It was further held

that, when the United States condemns land, the owner is not limited to the value of the property taken, but is entitled to such addition as will produce the equivalent of that value paid contemporaneously with the taking. The court said (at p. 306): "Interest at a proper rate is a good measure by which to ascertain the amount so to be added. The legal rate of interest, as established by the South Carolina statute was applied in this case. This was a 'palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely, of making "just compensation" for the land as it stands, at the time of taking.' *United States* v. *Sargent* (C. C. A. Eighth Circuit), 162 Fed. 81, 84."

We construe the decision in the last case cited to hold, in effect, that the statutory rate of interest within the State where the property is located affords, *prima facie*, a fair basis for admeasurement of just compensation for the delay in payment. We think that that rule is the proper one to be applied in the present case.

The right to just compensation is, of course, the controlling factor. No statute may interfere with or prejudice that right. On April 25, 1938, when title vested herein, the property owner's right to just compensation, including proper interest, became a vested property right. The statutes of this State recognized that right and provided that interest should be added to an award for the property taken. (Administrative Code, § B15–28.0; Tax Law, § 296; General Business Law, § 370.) The statutory rate of interest is not controlling if some other rate is required to meet the constitutional requirement for just compensation. *Prima facie*, however, the legal rate would be a proper rate. Up to July 1, 1939, that rate was the fixed rate of six per centum. Thereafter the law provided only for a maximum rate. Proof was required to fix the proper rate. But the maximum legal rate would be a proper rate, in the absence of proof requiring the fixation of some other rate, in order to award just compensation. Subdivision a of section B15–28.0 of the Administrative Code provides:

"Damages: when, how and to whom paid.

"a. All damages awarded by the court, with interest thereon from the date of the filing of the final decree, or if title to the real property acquired shall have vested in the City prior thereto, from the date of such vesting, and all costs, charges and expenses which may have been taxed shall be paid by the City to the respective owners mentioned or referred to in the final decree or to the persons in whose favor such costs, charges and expenses were taxed, as hereinafter provided."

Section 1435 of the Greater New York Charter had provided substantially the same thing with relation to the allowance of interest.

Section 370 of the General Business Law, which was in effect at all times involved herein, provides that the legal rate of interest shall be six per centum per annum. However, the right to interest at six per centum did not become a vested right merely because it was the legal rate prescribed at the time of vesting of title. Only the right to just compensation, including just and proper interest, was vested.

As above pointed out, a taking in condemnation affords a constitutional right to just compensation, not a contract right. Even if an implied contract could be said to have arisen as a legal fiction because of statutes requiring the payment of legal interest, such a contract would not imply that one specific rate must be paid for all the period of delay. The legal rate of interest fixes merely a fair measure or a *prima facie* measure of the proper rate to afford just compensation. In the absence of proof that some other rate must be paid to afford such compensation, the legal rate as it existed during the elapsed period would satisfy the constitutional requirement. We see no reason why, if the legal rate is changed during the period between the time of vesting of title in condemnation and the payment of money, what *prima facie* would be the proper rate of interest is not likewise deemed altered. Accordingly, at least until evidence is introduced showing that the altered rates do not afford just compensation, the maximum legal rate would be a proper amount to award after the change in the law.

We have held in the case of *People ex rel. Emigrant Industrial Savings Bank* v. *Sexton* (259 App. Div. 566) that chapter 594 of the Laws of 1939 was not to be given a retroactive effect. Therefore, this statute would not be construed to effect a change in the rate of interest that would, *prima facie*, award a full measure of compensation until the effective date of the new statute.

We have also decided in *People ex rel. Emigrant Industrial Savings Bank* v. *Sexton* (*supra*) that chapter 594 of the Laws of 1939 is constitutional. We need only add here that, until and unless four per centum is shown to be less than just compensation, it would not conflict with any constitutional right of the property owner to award him that rate.

The decree, so far as appealed from, should be amended and the orders modified so as to provide that interest shall be paid to the property owner at the rate of six per centum per annum to July 1, 1939, and at the rate of four per centum per annum thereafter until the date of payment, and as so modified affirmed, without costs.

MARTIN, P. J., TOWNLEY, DORE and COHN, JJ., concur.

Decree, so far as appealed from, unanimously amended and the orders modified so as to provide that interest shall be paid to the property owner at the rate of six per centum per annum to July 1, 1939, and at the rate of four per centum per annum thereafter until the date of payment, and as so modified affirmed, without costs. Settle order on notice.