[L. A. No. 20294. In Bank. Oct. 1, 1948.]

A. GREGORY, Respondent, v. THE STATE OF CALIFORNIA, Appellant.

James W. Hickey, Inheritance Tax Attorney, and J. Gould, Assistant Inheritance Tax Attorney, for Appellant.

Surr & Hellyer for Respondent.

CARTER, J.—In 1943 plaintiff filed a gift tax return and the state controller issued a Notice of Determination of Tax. Plaintiff paid the tax to defendant state under protest. In this action to recover the tax so paid, plaintiff recovered judgment for the amount of the tax, and, after appeal (*Gregory* v. *State of California,* 77 Cal.App.2d 26, 28 [174 P.2d 863, 175 P.2d 542]), pursuant to stipulation, judgment was entered in favor of plaintiff for a portion of the tax, it being conceded that the only issue was whether interest should be allowed on the amount overpaid on the tax. In the judgment the trial court allowed interest on the amount of the overpayment from and after. May 18, 1945, which was the effective date of the 1945 amendment to the gift tax statute.

Prior to the time the tax was paid under protest and the action was commenced to recover it, the gift tax statute authorized an action to recover taxes where they were paid under protest, but it was provided that no interest be allowed on any refund (Stats. 1943, ch. 658; 3 Deering's Gen. Laws, Act 8495c). In 1945, effective May 18th, the statute was

amended to provide that interest shall be allowed on any overpayment of any tax at the rate of 6 per cent per annum from the date of the overpayment. (Stats. 1945, ch. 380; Rev. & Tax. Code, § 16271.)

It is defendant's contention that the 1945 amendment has been improperly given a retroactive effect by the trial court, for the judgment allowed interest on the amount of the overpayment from the effective date of the amendment; and that to give it such an effect is a gift of public money contrary to the Constitution. (Cal. Const., art. IV, § 31.)

█ It has been held that where a statute provides that an obligation bear interest, and such obligation existed prior to the effective date of the statute, and would not bear interest except for a statute, a holding that interest be computed from the effective date of the statute, is not giving retroactive effect to such statute. (*Dunne* v. *Mastick,* 50 Cal. 244.) Prior to the adoption of the Civil Code no interest was allowed on legacies. That code provided that legacies bear interest. In the Dunne case, *supra,* the legacies there involved became vested before the adoption of the code. The court said (p. 247) : "The sections of the Civil Code went into effect on the first day of January, 1873. When interest is not specified in a contract, but is annexed as an incident by statute, it is allowed as damages for the refusal to pay the debt. (15 Wend. 80.) The legacies were due when the Civil Code went into operation. The Legislature had power to impose on all debtors interest from the date of the adoption of the code, by way of compensation for the delay in the payment of money already due. Such a statute is not retrospective, since it operates only on the future rights of the parties. A fresh demand and refusal would be a new assertion of a right, and would impose a new liability. So in legal effect was a neglect without a demand. (*Bullock* v. *Boyd,* 1 Hoff. Ch. R. 30; *White* v. *Lyons,* 42 Cal. 284.) We think, therefore, that interest at the statutory rate should have been allowed from the first day of January, 1873." (See to the same effect, *White* v. *Lyons,* 42 Cal. 279; *Cummings* v. *Howard,* 63 Cal. 503.) There is nothing in *Aetna Casualty & Surety Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388 [182 P.2d 159], contrary to the holding in those cases. There compensation payable for past injuries was increased by an amendment to the statute—there being nothing new occurring after the effective date of the act which would make the statute operate prospectively. Here the state continues to withhold from the tax-

payer an overpayment to which he is entitled *after* the effective date of the act, and the statute operates on that future condition or action by the state.

Defendant asserts, however, that the rule of the Dunne case is not applicable for there the statute concerned interest as between private parties rather than between the state and an individual. We fail to see how that can affect the essential question of whether the act is or is not being applied retroactively. Assuming as asserted by defendant that the state is not liable for interest on its obligations unless it so provides by statute, that the payment of interest by it is a matter of grace, and that the interest accruing after maturity is an implied part of the basic contract, we still have no reason to not apply the rule in the Dunne case. In support of the last-mentioned contention, defendant cites *Irvine* v. *Reclamation Dist. No. 108,* 24 Cal.2d 468 [150 P.2d 428], but that case involved a contract with a political subdivision of the state which provided for interest and the issue was whether it continued after maturity. In the instant case we have no element of contract. The provision for interest is purely statutory and the only issue is whether the statute was applied retroactively. If we speak of the matter in terms of an implied in law contract, then, like in the Dunne case, the statute declares a contract that for future withholding of money, it will pay interest thereon. ■ Moreover, it should be noted that whatever the law may be elsewhere it has always been the rule in California that there is no implied contract of any kind that the state will pay interest on its indebtedness for it is liable only when made so by statute. (See 23 Cal.Jur. 588.) Thus all we have is a statutory liability and the sole question is whether the statute is applied retroactively. It is clearly not applied retroactively here because the state is being charged interest whether we call it damages or otherwise for the withholding of an individual's money in the future. It has by statute authorized such a charge. With reference to the claim that no interest is allowable against the state except by statute, the same was true as between individuals in the Dunne case and the statute here like the one there authorizes interest.

■ Speaking to the contention of an unlawful gift of public money, defendant relies upon *Molineux* v. *State of California,* 109 Cal. 378 [42 P. 34, 50 Am.St.Rep. 49], and *Davis* v. *State,* 121 Cal. 210 [53 P. 555]. In the Molineux

case the issue was whether a statute authorized payment of interest by the state on interest coupons of Indian war bonds. The decision was based upon two grounds but the first and main ground is that the statute properly construed did not authorize interest. The second ground, gift of public moneys, is more or less of an afterthought. The Davis case merely reaffirmed the holding of the Molineux case on the *first* ground. In any event it does not appear in the Molineux case whether the court was dealing with the running of interest on the debt after the effective date of the alleged interest statute or before. Naturally if the interest was on the debt before the operative date of the statute we would have the problem of a gift of public funds. But where, as here, the interest runs after the effective date of the amendment, the state receives a substantial benefit for the payment of interest, namely, the retention and use thereafter of the taxpayer's money, which continues only as long as that benefit is conferred. The latest authority on the subject supports that reasoning. (*County of Los Angeles* v. *Southern Cal. Tel. Co., ante,* pp. 378, 384 [196 P.2d 773] ; see, also, *Patrick* v. *Riley,* 209 Cal. 350 [287 P. 455] ; *Yosemite Stage etc. Co.* v. *Dunn,* 83 Cal. 264 [23 P. 369].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—In considering the amendment to the Gift Tax Act (Stats. 1945, ch. 380, p. 838), which previously had provided that no interest should be allowed on a refund of taxes, the first question which arises is whether the Legislature intended that it should apply to a judgment rendered after its effective date in an action previously commenced to recover the amount of an overpayment of taxes. A cardinal rule of construction in this regard is that statutes are presumed to be intended to operate prospectively and should never be construed as having a retrospective effect unless their terms clearly show a legislative intention that they should so operate. (*Aetna Casualty & Surety Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388 [182 P.2d 159] ; *Estate of Childs,* 18 Cal.2d 237 [115 P.2d 432, 136 A.L.R. 333] ; *Jones* v. *Union Oil Co.,* 218 Cal. 775 [25 P.2d 5] ; *In re Cate,* 207 Cal. 443 [279 P. 131] ; *Estate of Frees,* 187 Cal. 150 [201 P. 112] ; *O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366] ; *Bank of America N. T. &*

*S. A.* v. *Dennison,* 8 Cal.App.2d 173 [47 P.2d 296] ; *Anderson* v. *Ott,* 127 Cal.App. 122 [15 P.2d 526].) The provision of Civil Code, section 3, that ''No part of it is retroactive unless expressly so declared'' states this fundamental principle. (*In re Cate, supra; Estate of Frees, supra; Estate of Richards,* 133 Cal. 524 [65 P. 1034].)

The allowance of interest against the government is not chargeable because of delay or default. *Reclamation Dist. No. 1500* v. *Reclamation Board,* 197 Cal. 482, 503 [241 P. 552], in holding that section 1915 of the Civil Code has no application to the state, cites with approval the following statement from Ruling Case Law : ''The theory upon which the rule is based is that whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes.'' (15 R.C.L. § 14, p. 17.) The same text is also quoted with approval in *Engebretson* v. *City of San Diego,* 185 Cal. 475, 479 [197 P. 651] ; and see *United States* v. *Sherman,* 98 U.S. 565, 567-568 [25 L.Ed. 235].

Generally speaking, interest is of two kinds—it ''is compensation allowed by law or fixed by the parties for the use or detention of money, or allowed by law as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim.'' (McCormick on Damages, § 50, p. 205.)

Some distinctions between the cases in which conventional or promised interest (as McCormick terms it) is allowed, and those in which interest is recoverable only by way of indemnification is made clear in an early Wisconsin case. The court there said : ''On a contract which stipulates for interest, interest at the agreed rate, or, in the absence of an agreed rate, at the rate prescribed by the law at the date of the contract, will be the rate recoverable until the repayment of the principal sum. *Spencer* v. *Maxfield,* 16 Wis. 178. A change of the legal rate would not affect the rate of interest recoverable upon such a contract. But where the contract is silent upon the subject of interest, and in many cases of torts, a different rule obtains. There damages, rather than interest, are to be admeasured. In awarding damages, the law aims at indemnity. The purpose is to indemnify the plaintiff for the loss which he has suffered by reason of the

defendant's failure to pay the money when it became due. The law assumes, for want of a more certain datum, that interest at the legal rate, during the period through which the money has been withheld, is a fair measure of such loss; for, if the money had come to hand, it is fair to presume it would have produced that rate. But when a change of the legal rate of interest has been made during the period of the default, it is manifest that neither the rate in force at the time of the happening of the default nor the new rate in force at the time of judgment would be a fair measure for the whole period; but a fairer measure, for all cases, is the rate in force during the period, as varied by legislation, and this is the rule found to be established by nearly or quite all the decided cases. *Wilson* v. *Cobb,* 31 N.J.Eq. 91; *Jersey City* v. *O'Callaghan,* 41 N.J. Law, 339 [sec. 349] ; *Reese* v. *Rutherford,* 90 N.Y. 644; *Sanders* v. *Railway Co.,* 94 N.Y. 641; O'Brien v. *Young,* 95 N.Y. 428 [47 Am.Rep. 64] ; *White* v. *Lyons,* 42 Cal. 279; *Stark* v. *Olney,* 3 Or. 88. In *Reese* v. *Rutherford, supra,* it is said, in effect, that the right to recover as damages interest at the rate in force at the time of the default down to the time when the legal rate is changed is in the nature of a vested right, of which the plaintiff cannot be deprived by retroactive legislation . . .'' (*State* v. *Guenther,* 87 Wis. 673, 676 [58 N.W. 1105, 1106].)

The California cases involving changes in the legal rate of interest, recognize the same distinctions. In *Aguirre* v. *Packard,* 14 Cal. 171 [73 Am.Dec. 645], an attempt to apply the increased rate specified by a new law was rejected, the court saying ''Interest follows the contract according to the law in existence at the time and place of the contract, or of the performance of it. But a subsequent change of the legal rate of interest does not affect the contract.'' (P. 172.)

The rule in this type of situation is bottomed on the premise that ''where there has been a change in the rate of legal interest as declared by statute it is well settled that such a change cannot be retroactive, and that the rate which was legal at the time the obligation was incurred will hold when the obligation matures, notwithstanding changes in the statute in the interim.'' (15 R.C.L. 19; see also annotation, 87 A.L.R. 462, 464.)

In considering the applicability of the statute as amended to Gregory's cause of action, it is necessary to determine the nature of the obligation upon which interest is claimed. The right to a tax refund is in the nature of an action in assumpsit

for money had and received, that is, an action upon a contract implied in law, or quasi-contract, made at the time of the overpayment, that the State will refund the excess payment. (*Welsbach Co.* v. *State of California,* 206 Cal. 556 [275 P. 436]; *Aalwyn's Law Inst.* v. *San Francisco,* 39 Cal.App. 414 [179 P. 220]; see 24 Cal.Jur. 306, 307.) The same is true under federal law, where it is said that an action to recover taxes erroneously paid "is the lineal successor of the common count in indebitatus assumpsit for money had and received. Originally an action for the recovery of debt, favored because more convenient and flexible than the common law action of debt, it has been gradually expanded as a medium for recovery upon every form of quasi-contractual obligation in which the duty to pay money is imposed by law, independently of contract, express or implied in fact." (*Stone* v. *White,* 301 U.S. 532, 534 [57 S.Ct. 851, 81 L.Ed. 1265].) It is true that the right and remedy are founded upon a statute; but that does not change the nature of the underlying transaction, which is quasi-contract, or contract implied in law. It is upon this theory that the rule is applied in both state and federal cases to recover upon rights equitable in nature to avoid unjust enrichment. (*Stone* v. *White, supra; Lewis* v. *Reynolds,* 284 U.S. 281 [52 S.Ct. 145, 76 L.Ed. 293]; *George Moore Ice Cream Co.* v. *Rose,* 289 U.S. 373 [53 S.Ct. 620, 77 L.Ed. 1265]; *United States* v. *Jefferson Electric Mfg. Co.,* 291 U.S. 386 [54 S.Ct. 443, 78 L.Ed. 859]; *Pacific Fruit Express Co.* v. *McColgan,* 67 Cal.App.2d 93 [153 P.2d 607].)

The obligation of the state to repay Gregory was an implied promise and the decision by the trial court that an amount in excess of the tax due had been exacted included, as a conclusion of law, the determination that the promise had existed from the time of the collection of the overpayment. The implied in law contract created at the time of the overpayment then included the provision that "no interest shall be allowed on any refund" (Gift Tax Act of 1939, § 74, *supra*). The suit for refund was brought immediately and it is axiomatic that a plaintiff suing upon a contract, express or implied, may recover only upon the cause of action existing at the time the suit is brought.

Before amendments were made to the Tax Law of New York, it had provided, by section 296, that overpayments should be refunded together with interest thereon from the date of payment. The word "interest" had been determined

to mean interest at the legal rate. In 1939, a statute was enacted which provided as to interest on judgments and accrued claims that the "rate of interest . . . shall not exceed four per centum per annum." As to a claim arising prior to, but reduced to judgment after, the effective date of the amendment, it was held that the claim should bear interest at 6 per cent from the date of the overpayment to July 1, 1939, and 4 per cent thereafter. (*People* v. *Sexton,* 259 App. Div. 566 [20 N.Y.S.2d 41], affirmed 284 N.Y. 57 [29 N.E.2d 469]; *People* v. *Miller,* 173 Misc. 397 [17 N.Y.S.2d 202]; see *In re Bronx River Parkway,* 259 App.Div. 552 [20 N.Y.S.2d 53], for same rule applied as to condemnation award.) The court in the Sexton case said, "We are of the view that the contract implied herein was one to repay interest at such rate or rates as might be prescribed by law from time to time until the repayment had been made. Therefore, the promise of the City will be discharged by paying interest at the rate of six per centum per annum during the period in which that rate was fixed as the legal rate of interest, and by paying a rate not to exceed four per centum per annum during the period when that rate was fixed as the maximum amount of interest to be paid, after the proper rate is fixed by the court." (*Supra,* p. 49 [20 N.Y.S.].)

In the course of reaching this result, the court distinguished the situation here presented by saying: "Were the promise implied herein to repay a specific rate of interest, a subsequent statute could not change the right to receive that rate of interest." (*Supra,* p. 49 [20 N.Y.S.].) The same reasoning is applicable to an obligation of the State to refund an overpayment which arose when the taxing statute provided that "no interest shall be allowed on any refund granted under this act. . . ." (Gift Tax Act of 1939, § 74, *supra.*)

The trial court's allowance of interest from the effective date of the amendment is a retrospective application of the statute because one of the terms of the obligation which is the basis of the judgment was that no interest should be recovered. (*Aetna Cas. Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388, 394 [182 P.2d 159].) The majority opinion, in reaching the contrary conclusion, impliedly overrules the Aetna case. A frequently quoted statement of Justice Story defines a retroactive or retrospective law, as follows: "Upon principle, every statute which takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transac-

tions or considerations already past, must be deemed retrospective." (*Gospel* v. *Wheeler,* Fed.Cas. No. 13, 156, 2 Gall. 105, 139.)

The amendatory act provides that "inasmuch as [the act] . . . provides for a tax levy for the usual current expenses of the State, [it] . . . shall, . . . take effect immediately." This does not manifest an intention that the change shall apply retroactively to overpayments made prior to its effective date, but merely that it shall take effect immediately and apply to all overpayments made thereafter. There is nothing in the statute to warrant a holding that the Legislature intended to have the interest rate applied retroactively to overpayments made prior to its enactment, and in the absence of such an expressed intention, the statute should be applied prospectively only.

Cases such as *County of Los Angeles* v. *Southern Cal. Tel. Co., ante,* p. 378 [196 P.2d 773], are not authority, in my judgment, for the position that the allowance of interest, where none was theretofore required, is not a gift of public money. The majority has said that no contract is here involved, but then hold that there is no gift of public money, because "the State receives a substantial benefit for the payment of interest, namely, the retention and use thereafter of the taxpayer's money, which continues only as long as that benefit is conferred." Consideration is an element of contract, and if the allowance of interest is based upon the theory of contract, certainly it may not be said that the terms of the statute as in effect at the time of payment by Gregory, "have no element of contract."

Where rights are purely statutory, the majority opinion states, no element of contract is present. But the Southern Cal. Tel. Co. case, relied upon for the conclusion that there is consideration, held that the statute there involved "is a continuing offer extended to telephone and telegraph companies to use the highways, which offer when accepted by the construction and maintenance of lines constitutes a binding contract based on adequate consideration, and that the vested right established thereby cannot be impaired by subsequent acts of the Legislature." (*Supra,* p. 384.) And this court has decided that pension rights which have been acquired by public employees are vested rights which cannot be abrogated by the public body without impairing its obligation of contract. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848 [179 P.2d

799].) Certainly the state, as well as an individual, may acquire a vested right by the operation of a statute. (*Estate of Potter,* 188 Cal. 55, 60 [204 P. 826] ; *Trippet* v. *State,* 149 Cal. 521, 526 [86 P. 1084, 8 L.R.A.N.S. 1210] ; *Estate of Stanford,* 126 Cal. 112, 119 [54 P. 259, 58 P. 462, 45 L.R.A. 788].)

Upon the overpayment of the tax here involved, the statute provided that the taxpayer could recover the amount that was in excess, from the state. To that extent the taxpayer had a vested right in the excess. The state, on the other hand, had an obligation to refund the amount which was judicially found to be in excess of the sum due. The nature and extent of the obligation is ascertained from the language of the statute at the time the obligation was established. (*Kern* v. *City of Long Beach, supra,* p. 850.) And a subsequent statute, which has the effect of reducing the amount the state is to receive, or of increasing an obligation of the state, already existing, makes a gift of the property of the state to the extent of the reduction or increase, contrary to section 31, article IV, of the Constitution. (*Estate of Potter, supra*; *Estate of Rossi,* 169 Cal. 148 [146 P. 430] ; *Estate of Kennedy,* 157 Cal. 517, 527 [108 P. 280, 29 L.R.A.N.S. 428] ; *Estate of Martin,* 153 Cal. 225, 227 [94 P. 1053] ; *Estate of Woodard,* 153 Cal. 39 [94 P. 942] ; *Trippet* v. *State, supra*; *Estate of Stanford, supra.*) No suggestion is made that the payment here is for a ''public purpose'' so that the benefit to the state is in the nature of consideration. (*County of Alameda* v. *Janssen,* 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141].) Such an enlargement of the existing obligation, in my opinion, is but a gratuitous transfer of the property of the state, made voluntarily and without consideration. (*Yosemite Stage & T. Co.* v. *Dunn,* 83 Cal. 264 [23 P. 369].)

For these reasons, I believe that the judgment should be reversed.