[No. B098355. Second Dist., Div. Seven. Aug. 11, 1997.]

BREDA COSTRUZIONI FERROVIARIE S.P.A., Plaintiff and Appellant,
v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY, Defendant and Appellant.

## COUNSEL

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, H. Mathew Moore, Matthew J. Jacobs and Joseph A. Bosco for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel and Richard P. Chastang, Deputy County Counsel for Defendant and Appellant.

## OPINION

NEAL, J.—

### SUMMARY

In this case we hold that the takings clause of the Fifth Amendment of the United States Constitution, applied to the states through the Fourteenth

Amendment, and California common law as well, bar a public entity from retaining for its own account interest earned by funds the entity withheld from a prime contractor pursuant to a subcontractor's stop notice. We affirm the trial court's order requiring the entity to pay the interest to the contractor.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, respondent and cross-appellant Breda Costruzioni Ferroviarie S.P.A. (Breda) had a prime contract to provide rail cars to defendant, appellant and cross-respondent Los Angeles County Metropolitan Transit Authority (MTA). ABB Traction, Inc. (ABB), the subcontractor providing Breda with car motors, filed a stop notice requiring MTA to withhold payments owed to Breda. The stop notice procedure is similar to a mechanic's lien, and it enables a subcontractor or material supplier to force a project owner to withhold monies the owner owes to a prime contractor, for the purpose of paying sums allegedly due the subcontractor or material supplier.

MTA withheld $4,255,000 in response to ABB's stop notice. MTA wrote Breda advising of the withholding, referring to itself as a "fundholder," and stating that interest would be paid to ABB if it successfully enforced the stop notice. MTA kept the $4,255,000 in an interest bearing account. The funds earned $616,743 in interest while held in the account.

MTA paid Breda the full principal after Breda filed a stop notice release bond, but MTA refused to pay Breda the accrued interest.

Breda sued in superior court to recover the interest. MTA argued in the trial court, as it argues here, that a public entity has no obligation to pay interest absent an express statutory command. MTA did not urge, or offer any evidence, that withholding all or any part of the interest was necessary to defray administrative expense incurred by MTA in withholding the funds or complying with this stop notice or stop notices generally.

The trial court ordered MTA to pay Breda $615,743 in interest,[1] observing that the MTA "shouldn't be making a profit because the MTA has no right to the money other than as a stakeholder." The trial court denied Breda's request that interest be computed at a statutory 10 percent rate, a rate higher than the funds actually earned while invested by MTA.

MTA appeals the trial court's order requiring payment of the interest to Breda. Breda cross-appeals the trial court's refusal to apply the 10 percent interest rate.

---

[1]We are not clear why the trial court ordered payment of $615,743, rather than the $616,743 computed by MTA. However, Breda does not assert that this minor disparity was error.

### DISCUSSION

■ The United States Supreme Court in *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith* (1980) 449 U.S. 155 [66 L.Ed.2d 358, 101 S.Ct. 446] held that the taking clause bars a public entity from appropriating without justification interest earned on funds held by the entity as a stakeholder. *Webb's* applies here and requires that we affirm the trial court's order compelling MTA to pay Breda the earned interest.

In *Webb's* the Supreme Court struck down a Florida statute (Fla. Stat. § 28.33) which provided: "All interest accruing from moneys deposited [in interpleader] shall be deemed income of the office of the clerk of the circuit court. . ."

In *Webb's* an insolvent chain of pharmacies, in receivership, sold its assets. The proceeds were insufficient to pay all debts. The assets' purchaser interpleaded the purchase price with the Seminole County Circuit Court Clerk. The funds earned about $100,000 in interest while held by the court. The clerk paid the principal to the receiver, after deducting a $9,228 fee "for services rendered" for "receiving money into court," authorized by Florida statute section 28.24. However, the clerk refused to pay the receiver the interest, invoking section 28.33. The trial court granted the receiver's motion to recover the interest, apparently finding section 28.33 unconstitutional, but the Florida Supreme Court reversed, holding the statute constitutional and allowing the county to keep the interest.

The United States Supreme Court reversed the Florida Supreme Court and held that the taking clause forbade the state from appropriating the interest earned on the interpleaded funds.

The taking clause of the Fifth Amendment states: ". . . nor shall private property be taken for public use, without just compensation."

The Supreme Court said, in pertinent part:

"The principal sum deposited in the registry of the court plainly was private property, and was not the property of Seminole County. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"We . . . turn to the interest issue. What would justify the county's retention of that interest? It is obvious that the interest was not a fee for

services, for any services obligation to the county was paid for and satisfied by the substantial fee charged pursuant to [section] 28.24 and described specifically in that statute as a fee 'for services' by the clerk's office. Section 28.33, in contrast, in no way relates the interest of which it speaks to 'services rendered.' Indeed, if the county were entitled to interest, its officials would feel an inherent pressure and possess a natural inclination to defer distribution, for that interest return would be greater the longer the fund is held; there would be, therefore, a built-in disincentive against distributing the principal to those entitled to it.

". . . . . . . . . . . . . . . . . . . . . . . . .

". . . The earnings of a fund are incidents of ownership of the fund itself and are the property just as the fund itself is property. The state statute has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held in the registry.

"To put it another way: a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power." (*Webb's Fabulous Pharmacies, Inc.* v. *Beckwith, supra*, 449 U.S. at pp.160-164 [101 S.Ct. at pp. 450-452].)

Our present case is indistinguishable in principle from *Webb's*. Like Seminole County in *Webb's*, the MTA, a public entity made a fundholder under a procedure authorized by law, seeks to appropriate from the owner, without compensation, the accrued interest. Here, as in *Webb's*, no legitimate or substantial state interest is advanced justifying the appropriation. The earned interest rightly belonged to the principal's owner, Breda, as an incident of ownership. The taking clause bars MTA's appropriation of the interest.

Of course, our case differs superficially from *Webb's*. No California statute purports to authorize a public entity holding funds under a stop notice to keep the interest earned while the funds are in the entity's hands. MTA instead relies on case law predating *Webb's* which MTA says holds that in California a governmental entity must pay interest only if a specific statute so mandates. (*Gregory* v. *California* (1948) 32 Cal.2d 700, 703 [197 P.2d 728, 4 A.L.R.2d 924] ["the state [is liable for] interest on its indebtedness . . . only when made so by statute"]; *Ball* v. *County of Los Angeles* (1978)

82 Cal.App.3d 312, 317 [147 Cal.Rptr. 252].) MTA urges that no statute requires payment of interest here.[2]

However, a public entity's retention of interest earned by funds held under a stop notice is unconstitutional whether or not authorized by statute. If California had a statute expressly permitting MTA to keep the interest, that statute would be unconstitutional under *Webb's*, except to the extent it permitted a reasonable withholding for the cost of services. And if the moneys instead are withheld under court-created law, such as *Gregory* v. *California,* the taking of the interest still is an unconstitutional "taking for public use, without just compensation" under *Webb's*: "Neither the Florida Legislature by statute, nor the Florida courts by judicial decree, may accomplish the result the county seeks simply by recharacterizing the principal as 'public money' because it is held temporarily by the court." (*Webb's Fabulous Pharmacies, Inc.* v. *Beckwith, supra,* 449 U.S. at p.164 [101 S.Ct. at p. 452].)

Further, we believe the controlling California common law rule appears in *Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 629 [197 P.2d 543], not in the concurrently decided *Gregory* case. In *Metropolitan Water Dist.* the court found that interest earned by funds belonged to the litigant who deposited the principal with the superior court as security in an eminent domain case. The governing statute (the Depositary Act) provided: " '*Interest on all moneys deposited* as herein provided *shall belong to* and shall be paid quarterly into the general fund of *the county* . . . represented by the officer making such deposit . . . .' " (*Id.* at p. 629, italics added, original italics deleted.)

Despite the statutory command that the interest belonged outright to the county, our Supreme Court ruled that the county (the superior court) held both principal and interest as *custodian for the plaintiff who made the deposit:*

"We conclude that it is the superior court which in the view of the law holds the entire sum, the principal together with its accretions of interest, as

---

[2]The California stop notice statutes are silent on the issue. Civil Code section 3176.5, in the *private* stop notice chapter, allows a *prevailing plaintiff* in a stop notice suit to recover interest, but does not state whether the owner or general contractor gets the interest if the plaintiff fails.

Civil Code section 3187 of the *public* stop notice law authorizes a public entity to pay an "original contractor" moneys exceeding "an amount sufficient to answer [all stop notice claims] *plus such interest* . . . *as might be reasonably anticipated.*" (Italics added.) The strong implication is that prevailing public stop notice claimants, like private ones, can recover interest. Again, however, the public stop notice chapter is silent as to who keeps the interest if the claimant does not prevail.

custodian for the water district, and, inasmuch as the object of such retention has ended, the court must return to the water district the entire sum . . . .

". . . The respondents' interpretation of the statute in issue results in a windfall to the county, substantially undeserved and unearned." (32 Cal.2d at pp. 630-631.)

The court concluded, in language similar to that found in *Webb's*: ". . . any interest paid on . . . moneys [deposited with the court] . . . attaches in ownership to the owner of the moneys . . . ." (32 Cal.2d at p. 622.)

The court apparently was persuaded by the water district's argument that the court held the funds as a *trustee*, and that: ". . . as accretions to the funds belonging to appellant, under ordinary trust principles, the interest should follow the principal to the treasury of the water district." (32 Cal.2d at pp. 628-629.)

*Metropolitan Water Dist.*, like our case, involved a public entity as *stakeholder*; *Gregory*, by contrast, involved the state in a different role, as a party litigant (the taxing authority). Moreover, *Gregory*'s pronouncement that only a statute could render the state liable for interest was dicta. There *was* such a statute there, hence no need to decide the rule absent a statute, and the court affirmed an award of interest to the plaintiff taxpayer based on that statute.[3]

Thus the governing California case authority, as well as the United States Constitution, supports our holding here.

Nor can MTA defend withholding Breda's interest as necessary to defray expenses of administering the stop notice procedure. No provision of the stop notice law authorizes this. Further, MTA offered no evidence in the trial court that it had incurred such expense. *Metropolitan Water Dist.* is again apposite: "We do not here reach the question . . . as to whether the Legislature legally can or cannot, as compensation to the county for the use of its treasurer, his time and his services, provide for some remuneration to be deducted from interest earned on funds deposited with him. No such provision is present here, and there is no indication or evidence that such

---

[3]The Legislature responded to court decisions exempting public entities from paying interest by amending Civil Code 3287, subdivision (a) in 1955, to provide for interest recovery on damage awards against "any political subdivision of the state," and again in 1959 to provide for interest recovery against " 'the state or any county, city, city and county, municipal corporation, public district [or] public agency.' " (See Historical Note, 12 West's Ann. Civ. Code (1970 ed.) foll. § 3287, pp. 51, 54.)

may have been the purpose of . . . the Depositary Act." (32 Cal.2d at p. 631.)

The trial court here properly ordered MTA to pay Breda the $615,743 in interest actually earned.

Finally, we reject Breda's claim that a 10 percent statutory interest rate should have been applied. Breda relies on Public Contract Code section 20104.50, which requires a public entity to pay interest when it delays paying an *undisputed* pay request from a contractor. Section 20104.50 requires payment of interest at the rate specified in Code of Civil Procedure section 685.010, subdivision (a), presently 10 percent.

However, a pay request denied because of a stop notice is not "undisputed." The money is withheld because a subcontractor or material supplier lays claim to the same moneys which the contractor requests in payment, thus disputing the contractor's entitlement to the money. It is most unlikely that the Legislature intended to penalize a public entity for legally mandated compliance with the stop notice law by requiring the entity to pay a high, statutory interest rate which exceeds the interest actually earned on moneys withheld. Breda cites no commentary or authority to support such an implausible construction of Public Contract Code section 20104.50.

### DISPOSITION

The judgment requiring MTA to pay Breda $615,743 is affirmed. Breda shall recover its costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.